HOMMEL, d.b.a. Hommel Electric, Appellant,

v.

MICCO et al., Appellees.

[Cite as *Hommel v. Micco* (1991), 76 Ohio App.3d 690.]

Court of Appeals of Ohio,
Lake County.

No. 90–L–15–101.

Decided Dec. 13, 1991.

*Richard D. Eisenberg,* for appellant.

*Walter J. McNamara III,* for appellees.

CHRISTLEY, Presiding Judge.

This is an appeal from a judgment of the Mentor Municipal Court, finding in favor of appellees, Jerome Micco and R.R. Buescher, on the complaint of appellant, Frederick Hommel, d.b.a. Hommel Electric.

This action was based upon certain events which took place during a two-year period in the mid–1980s. At that time, appellee Micco was a major shareholder in an Ohio corporation, known as "Micco and Company." Also duri*g this period, appellee Buescher was a major shareholder in a second Ohio corporation, known as "Buescher and Associates."

In approximately 1980, these two entities, with appellees acting as agents for their respective companies, entered into a joint venture and formed an Ohio general partnership, known as "Harbor Creek Company." In turn, the Harbor Creek Company became the sole general partner in a limited partnership, known as "Harbor Creek Limited." In addition to being shareholders and officers in their own corporations, appellees were limited partners in Harbor Creek Limited.

The limited partnership was formed for the purpose of constructing a condominium complex, appropriately known as "Harbor Creek." At the beginning of the project, the limited partnership hired a construction supervisor, whose primary duties included purchasing the materials and dealing with the contractors. In performing these duties, the supervisor primarily consulted with appellee Buescher, although he also had contact with appellee Micco.

At some point in 1985, the limited partnership began to experience financial difficulty, and the construction supervisor was released. At that point, appellee Micco began to make many of the day-to-day decisions on the construction site.

Appellant is an electrical contractor and operates his own business, known as "Hommel Electric." In 1984, before the construction supervisor was released, appellant submitted a bid to the limited partnership concerning certain electrical work in the project. This bid was accepted, and appellant

was hired as a subcontractor. Over the next two years, appellant worked on a number of the condominium units, including the unit owned by appellee Micco and his wife. Micco paid appellant directly for the work on his own unit.

During 1985, appellant worked under the direction of the construction supervisor. However, in both submitting his bid to Harbor Creek Limited and performing his work after the supervisor had been released, appellant had direct contact with appellees Micco and Buescher. Moreover, appellant submitted his invoices concerning the work he had performed directly to appellee Micco. During the early stages of his work, he did receive some payment from Harbor Creek Limited.

Due to the financial problems of Harbor Creek Limited, appellant was not paid for the majority of the work which he performed. Concerning the few invoices that were paid, there was no testimony as to who actually paid them. Accordingly, in May 1989, appellant initiated the instant action. In his complaint, appellant alleged that he had entered into an oral agreement with appellees to perform the work in question. In answering, appellees asserted that the oral agreement had been with the limited partnership, Harbor Creek Limited, and that they were not personally responsible for the debt owed.

An abbreviated trial was held before the trial court. Based upon the evidence presented, the court found that in representing the limited partnership and supervising the construction project, appellees had exercised some control over the management of the business. Nevertheless, the court held that under the relevant statutory law, appellees had not acted beyond the rights and powers of limited partners and therefore could not be held liable for the debts incurred by the limited partnership.

On appeal to this court, appellant has assigned the following as error:

"The trial court erred as a matter of law in holding the defendants-appellees, as limited partners, has [*sic*] no liability to plaintiff-appellant, notwithstanding its finding that they exercised control/management of partnership business substantially the same as a general partner and the evidence that they had exclusive control of the company business."

The foregoing assignment essentially raises a question of statutory interpretation. As was mentioned earlier, the trial court specifically found that appellees had exercised some control over the management of the limited partnership. The court then held that under the relevant statutory law, this fact was not sufficient to warrant the extension of liability to appellees for the debt owed to appellant. Under his sole assignment, appellant maintains that the court's legal conclusion as to the liability of a limited partner was erroneous.

The liability of a limited partner is governed by R.C. 1782.19. Section (A) of this statute states:

"(A) Except as provided in division (D) of this section, a limited partner shall not become liable for the obligations of a limited partnership unless he is also a general partner or, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business. However, if the limited partner's participation in the control of the business is not substantially the same as the exercise of the powers of a general partner, he is liable only to persons who transact business with the limited partnership with actual knowledge of his participation in control."

Section (B) of the statute provides that a limited partner does not exercise "control of the business" by performing certain functions for the limited partnership. These functions include (1) acting as an agent, employee, or contractor for the limited partnership; (2) consulting with the general partner concerning the business of the limited partnership; and (3) voting on certain matters.

In its judgment entry, the trial court gave the following interpretation of section (A):

"This Statute [R.C. 1782.19] says that a Limited Partner will *not* be liable unless:

"1. He is a General Partner *or*

"2. Takes part in the control of the business beyond 'his rights and powers as a limited partner' and then only if

"a. he exercises control outside that permitted under [section (B)] or

"b. he exercises control not substantially the same as that of a General Partner." (Emphasis *sic.*)

The trial court then stated that " * * * any of the control/management exercised by the Defendants constitute other than that which could have been performed by the General Partner."

Based upon the foregoing statements, it is evident that under the trial court's interpretation of R.C. 1782.19(A), one of the ways in which a limited partner can become liable for the obligations of the limited partnership is to exercise control which is substantially different or "other than" that which is exercised by the general partner. Stated differently, the trial court *appears* to conclude that a limited partner can only become liable if he exercises control which goes beyond that which is normally exercised by the general partner.

However, the plain language contained in section (A) does not support the trial court's interpretation. The wording upon which the court relies, "control * * * not substantially the same as" that of a general partner, is taken from the second sentence in the section. This sentence was clearly designed to designate limited liability for those situations in which the limited partner exercised control for one transaction or for a short period of time. It was not designed to set forth a separate criterion for determining when a limited partner will become liable overall. Instead, it was technically a subcategory of the first criterion cited by the trial court.

■ Under R.C. 1782.19(A), if a limited partner is not a general partner, then the only way he can become liable for the obligations of the limited partnership is to take part in the control of the business. Under section (B), a limited partner takes part in the control if his actions go beyond the cited examples. (For the moment, we are going to deal only with the relationship between the limited partners and the general partner. Appellees' individual roles as officers and stockholders of the two respective individual corporations comprising the general partner Harbor Creek Company will be discussed later in this opinion.)

■ As to this standard and theory, the trial court held that the evidence supported the conclusion that appellees as limited partners acted merely as agents or employees of the general partner, Harbor Creek Company. However, the record before this court does not support this conclusion. During the trial, both appellees specifically admitted that they had the final "say so" on all of the major decisions which were made concerning the condominium project. For example, appellee Buescher stated that he personally approved the majority of the contracts which were made by the limited partnership. While the construction supervisor may have made the day-to-day decisions at the construction site, appellees "controlled" the direction of the project.

■ Thus, even though appellees described themselves as limited partners functioning as agents of the general partner, it is abundantly evident that they were, in actuality, functioning as general partners in that they exercised to all intents and purposes total control over the limited partnership, Harbor Creek Limited. The rights of a limited partner are similar to those of a stockholder in a corporation. See R.C. 1782.21. It is clear that under the statutory scheme set forth in R.C. Chapter 1782, a limited partner is not to have ultimate control over the decisions which are made during the ordinary course of business. That is the function of the general partner.

In this case, both appellees readily admitted that they made the majority of the decisions concerning the limited partnership. Thus, it is difficult to think

of a more obvious example of a situation to which R.C. 1782.19(A) was meant to apply. Cf. *Coppage Constr. Co. v. Liebl* (Apr. 26, 1989), Hamilton App. No. C–880270, unreported, 1989 WL 41503.

In support of the trial court's judgment, appellees emphasize that appellant initially knew he was dealing with a limited partnership, and that appellant was partially paid earlier on in the relationship by the limited partnership. However, under the statute, these facts are simply irrelevant, as a person who initially enjoys the benefit of the shield of a limited partnership can lose that shield by overstepping his prescribed role as a limited partner. The record in this case demonstrates rather clearly that the roles of Micco and Buescher changed drastically with the progression of events, since they moved from bit players to principal players without providing adequate notice to those with whom they dealt. By assuming the responsibilities of general partners, appellees lost their previously limited liability as limited partners. Thus, the trial court erred in holding that appellees could not be liable for the debt owed to appellant under R.C. 1782.19.

As an alternative ground for affirming the trial court's judgment, appellees maintain that they could not be held liable because they were acting as agents of their respective corporations when appellant was hired. As was mentioned earlier, the sole general partner in the limited partnership was a general partnership, Harbor Creek Company. The partners in this latter entity were the two aforementioned corporations. During the trial, each appellee testified that in dealing with appellant, he was acting on behalf of his own corporation, not on his own behalf.

Under Ohio law, it is well established that a corporate officer will generally not be held individually liable on contracts which he enters into on behalf of the corporation. *Centennial Ins. Co. of New York v. Vic Tanny Internatl. of Toledo, Inc.* (1975), 46 Ohio App.2d 137, 75 O.O.2d 115, 346 N.E.2d 330. As appellees correctly note, the legal creation of the corporate veil plays a critical role in this country's economic system, since it allows individuals to limit their potential risk when entering into commercial transactions.

However, it is also evident that this limitation on individual liability also creates an opportunity for the corporate officer to engage in deceptive behavior, in that he could fail to indicate that he is acting on behalf of the corporation. As a result, this court has held that " * * * the corporate officer has a responsibility to clearly identify the capacity in which he is dealing in a specific transaction * * *." *Universal Energy Serv., Inc. v. Camilly* (May 3, 1991), Ashtabula App. No. 90–A–1533, unreported, at 7, 1991 WL 70787. The failure to comply with this rule will expose the corporate officer to individual liability on the resulting contract. *Id.*

In this case, each appellee testified as to the existence of his respective corporation at the time when appellant worked for the limited partnership. Each also testified that in dealing with appellant, he was acting on behalf of his respective corporation. However, neither appellee testified that he told appellant that he was representing the corporation, not himself. In fact, appellee Buescher specifically stated on cross-examination that he "doubted" that he told appellant that he was acting as a corporate officer.

This court would note that the situation in this case was even more complex, as a general partnership and a limited partnership were also involved. The evidence clearly establishes that appellant knew that the primary entity with which he was originally dealing was a limited partnership. He is presumed to have known that both a general partner and the limited partnership itself could be held liable for the debts of the limited partnership. He cannot be presumed to have known that the limited partners were there in dual roles, switching back and forth as it suited them in an effort to avoid personal liability. Under these circumstances, we conclude that appellees were required to inform appellant of their status as employees or agents of the two corporations which formed the general partner, Harbor Creek Company.

On this point, we would note that the corporate records and minutes of Harbor Creek Company were not produced. Had they been in evidence they would have either proven or disproven appellees' alternate claim that they were agents duly authorized by board action of Harbor Creek Company. In other words, to allow "agents or employees" to make decisions of the magnitude of the ones made by the appellees, those decision-making powers had to have been authorized by Harbor Creek Company through action by its board of directors.

In reaching this conclusion, this court would emphasize that the evidence does not contain any indication that appellees intended to misrepresent their positions to appellant. However, since appellant had alleged in his complaint that appellees were individually liable on the debt, it was incumbent upon them to show that the corporate shield was established in this instance. In the opinion of this court, appellees failed to carry the burden of proof on this defense.

Thus, appellees had assumed the roles of general partners for two reasons: (1) they exceeded their roles as limited partners; and (2) they failed to establish that they had authority to act on behalf of the corporations, and that they had properly told appellant about their status as agents of the corporations.

For the foregoing reasons, appellant's sole assignment has merit. The judgment of the trial court is accordingly reversed, and the cause is remanded for the determination of damages in appellant's favor.

*Judgment reversed*
*and cause remanded.*

JOSEPH E. MAHONEY and NADER, JJ., concur.