STANWADE METAL PRODUCTS, INC., Appellee,

v.

HEINTZELMAN et al., Appellant.

[Cite as *Stanwade Metal Products, Inc. v. Heintzelman*, 158 Ohio App.3d 228, 2004-Ohio-4196.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2003–T–0039.

Decided Aug. 6, 2004.

230

Andrew W. Suhar, for appellee.

Stephen D. Heintzelman, pro se.

JUDITH A. CHRISTLEY, Judge.

{¶ 1} Appellant, Stephen D. Heintzelman, appeals from a judgment entry of the Trumbull County Court of Common Pleas granting partial summary judgment in favor of appellee, Stanwade Metal Products, Inc. ("Stanwade"). For the following reasons, we affirm the decision of the trial court.

{¶ 2} Stanwade is a corporation located in Hartford, Ohio, and is a manufacturer of steel tanks and other petroleum-related equipment. Heintzelman is a self-employed general construction contractor based in Findlay, Ohio. Over the years, Heintzelman has operated his business under the aegis of several corporate shells, including Environmental Construction & Design, Inc. ("Environmental Construction"), All–American Environmental, Inc., All–American Construction, and The Home Medic.

{¶ 3} In January 2000, Heintzelman contracted with Stanwade for the sale of a 20,000-gallon storage tank and related equipment for $19,258.26. At this time, Stanwade issued an invoice to Environmental Construction for $19,258.26. Heintzelman, as the sole shareholder and principal officer of Environmental Construction, had the tank delivered to Garner Transportation Group, Inc. ("Garner Trucking"). Garner Trucking paid Heintzelman the purchase price of $19,258.26 for the equipment. Heintzelman, in turn, issued three checks for $5,000 each to Stanwade on checks bearing the trade name "The Home Medic." When Stanwade tried to negotiate these checks, they were returned for insufficient funds.

{¶ 4} On August 3, 2001, Stanwade filed suit against Heintzelman and Environmental Construction. In the complaint, Stanwade alleged that it sold the equipment to Environmental Construction and that Heintzelman issued an invoice to Garner Trucking under the trade name of "All–American Construction dba The Home Medic." In his answer, Heintzelman admitted these allegations. During Heintzelman's subsequent deposition, he testified that All–American Environmental, Inc., received the payment from Garner Trucking. Heintzelman further testified that he is the sole shareholder and principal officer of All–American Environmental, Inc., and that "The Home Medic" is a trade name of All–American Environmental, Inc.

{¶ 5} Stanwade further alleged in its complaint that Heintzelman had falsely represented to Stanwade that Environmental Construction would be handling the resale of the products to Garner Trucking. Heintzelman denied this in his answer. Heintzelman countered that at the time he ordered the equipment, he informed Stanwade that "All–American Construction, Inc. would be performing and billing for work completed." In his deposition, Heintzelman reiterated that he told a Stanwade sales representative that "All–American" would be "doing the

work" and that the sales representative replied that he would nonetheless charge the sale to Environmental Construction's account.[1]

{¶ 6} Stanwade moved for partial summary judgment, seeking a ruling that Heintzelman was personally liable for the $19,258.26 owed to Stanwade. In support of the motion, Stanwade attached certified statements from the Ohio Secretary of State that the corporate status of All–American Environmental, Inc., was canceled for failure to pay the corporate franchise tax and that the report of use of the fictitious name All–American Construction had expired by operation of law.[2] Stanwade argued that because neither All–American Construction nor All–American Environmental, Inc., was a corporation in good standing, Heintzelman could be held personally liable for transactions he undertook on their behalf.

{¶ 7} In response, Heintzelman argued that the corporate status of All–American Environmental, Inc., had been reinstated and that, pursuant to R.C. 1701.922, the reinstatement acted retroactively to validate Heintzelman's actions on behalf of All–American regarding the sale of the Stanwade products to Garner Trucking.

{¶ 8} The trial court granted Stanwade's motion for partial summary judgment without additional analysis, indicating that this was a final appealable order, as there was no just cause for delay. From this judgment, appellant filed a timely notice of appeal with the following assignment of error:

{¶ 9} "The trial court erred to the prejudice of appellant in finding that no genuine issue of material fact existed and in granting Appellee partial summary judgment."

{¶ 10} Prior to addressing appellant's sole assignment of error, we will set forth the applicable standard of review. An appellate court reviews a trial court's decision on a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Summary judgment is proper when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the

---

**1.** It remains unclear whether it was All–American Construction, as indicated by the pleadings, or All–American Environmental, Inc., as indicated in Heintzelman's deposition, that actually sold the equipment to Garner Trucking. In Heintzelman's brief in opposition to Stanwade's motion for partial summary judgment, Heintzelman attached documents indicating that All–American Construction is a trade name of All–American Environmental, Inc.

**2.** Stanwade also attached a statement that All–American Construction Company, Inc.'s, corporate status was canceled for failure to maintain an agent. This company, however, appears to be an entity unrelated to the All–American Construction operated by Heintzelman.

evidence construed most strongly in his favor. Civ.R. 56(C); *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 268, 617 N.E.2d 1068.

{¶ 11} Material facts are those facts that might affect the outcome of the suit under the governing law of the case. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Turner,* 67 Ohio St.3d at 340, 617 N.E.2d 1123.

{¶ 12} The party seeking summary judgment on the ground that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The moving party must be able to point specifically to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id. at 293, 662 N.E.2d 264.

{¶ 13} If the moving party fails to satisfy this initial burden, summary judgment should be denied. Id. However, if this initial burden is met, the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. Id.

{¶ 14} Heintzelman argues under his single assignment of error that summary judgment was improper because there was no evidence before the trial court that Environmental Construction, the entity to which Stanwade allegedly sold the equipment, was not a properly registered Ohio corporation in good standing. We disagree for the reasons that follow.

{¶ 15} An analysis of the evidence submitted to the trial court demonstrates that even if a contract had been formed between Environmental Construction and Stanwade, Heintzelman failed to disclose to both Stanwade and Garner Trucking his repeated switching of principals during these transactions. He admittedly was representing at least three entities during this time. Thus, as will be demonstrated, Heintzelman is personally liable to Stanwade, and the judgment of the trial court should be affirmed.

{¶ 16} In determining summary judgment, the court may look to any admission in the answer of a defendant as evidence in support of a motion for summary judgment. See, e.g., Civ.R. 56(C). In his answer, Heintzelman admitted an allegation of the complaint that "[b]ased upon the representations made by

[Heintzelman] to [Stanwade], [Stanwade] sold products on account to defendant Environmental Construction and Design, Inc., for a total amount owed of $19,258.26 (Exhibit 'A')."

{¶ 17} In his response to paragraph five of the complaint, Heintzelman admitted that he caused the products to be shipped to Garner Trucking, not Environmental Construction. He further admitted in response to paragraph six that he, "individually, then issued an invoice to, and requested payment from, Garner Trucking under the trade name used by [Heintzelman] of All American Construction dba The Home Medic." Nevertheless, he denied the second allegation in paragraph six, that "Environmental Construction and Design, Inc., did not receive the proceeds of sale based upon the actions of [Heintzelman]."

{¶ 18} Finally, Heintzelman admitted per paragraph 11 that he "issued three checks to [Stanwade] under the trade name 'The Home Medic' (Exhibit 'B')." His answer then claimed as a defense that the three checks had been postdated and that Stanwade had presented them prematurely without consulting him.

{¶ 19} He further asserted the affirmative defense that "[Heintzelman] at the time of ordering equipment from [Stanwade], informed [Stanwade] that All–American Construction, Inc. would be performing and billing for work completed. All dealings were transacted with a sales representative of [Stanwade]."

{¶ 20} No link between Environmental Construction, All–American Construction, and The Home Medic was ever alleged in Heintzelman's answer, except that Heintzelman was admittedly the sole owner/operator for each. All–American Environmental, Inc., was never even mentioned in Heintzelman's answer, although Heintzelman was again the sole shareholder and officer.

{¶ 21} It is axiomatic that the responses in Heintzelman's answer constitute admissions that he cannot later contradict or challenge via deposition or other testimony absent an amendment pursuant to Civ.R. 15(A). See, e.g., *Rhoden v. Akron* (1988), 61 Ohio App.3d 725, 728, 573 N.E.2d 1131. Because Heintzelman never amended his answer to deny the foregoing admissions, as required by Civ.R. 15(A), he is precluded from using evidence of the type listed in Civ.R. 56(C) to contradict those admissions.

{¶ 22} Similarly, Heintzelman never asserted by answer or amendment the role of All–American Environmental, Inc., as an additional affirmative defense. "Where the bar of the [affirmative defense] is not presented as a defense either by [a] motion [to dismiss] before pleading pursuant to Civ.R. 12(B), or affirmatively in a responsive pleading pursuant to Civ.R. 8(C), or by amendment made under Civ.R. 15, then the defense is waived under Civ.R. 12(H), and a motion raising the defense at trial is not timely made." *Mills v. Whitehouse Trucking Co.* (1974), 40 Ohio St.2d 55, 69 O.O.2d 350, 320 N.E.2d 668, syllabus.

Thus, a response to a Civ.R. 56 motion for summary judgment is not one of the methods recognized to assert an affirmative defense. See, e.g., *Carmen v. Link* (1997), 119 Ohio App.3d 244, 250, 695 N.E.2d 28.

{¶ 23} It was not until his deposition that appellant first made the argument that All–American Environmental, Inc., using the trade name "All–American Construction" and "The Home Medic," was a principal in this transaction. Heintzelman did not present this affirmative defense until he filed his response to Stanwade's motion for partial summary judgment. As a result, Heintzelman was precluded from asserting this affirmative defense.[3]

{¶ 24} Although the trial court did not specify its reasons for granting Stanwade summary judgment, our review of the court's summary judgment is de novo. *Grafton*, 77 Ohio St.3d at 105, 671 N.E.2d 241. Therefore, the foregoing analysis is an appropriate means to affirm the trial court's grant of summary judgment.

{¶ 25} As previously indicated, in his answer, appellant admitted procuring this sale on behalf of Environmental Construction. In that same answer, he also admitted directing payment for the sale in the name of All–American Construction. Heintzelman testified that he personally deposited this check into the account of "All–American/Home Medic." However, in his deposition, Heintzelman claimed that All–American Environmental, Inc., received the payment from Garner Trucking, apparently based on his claim that All–American Environmental, Inc., also used the trade name of "The Home Medic."

{¶ 26} Stanwade's motion for partial summary judgment was based on the premise that All–American Construction and All–American Environmental, Inc., were not corporations in good standing. In support of this claim, Stanwade attached a self-authenticated certificate of cancellation for both All–American Construction and All–American Environmental, Inc.

{¶ 27} However, Heintzelman claimed in his response that "All–American Construction" and "The Home Medic" were simply trade names of All–American Environmental, Inc. In support of his claim, Heintzelman attached a self-authenticated certificate of reinstatement for All–American Environmental, Inc., issued by the Ohio Secretary of State. Nevertheless, Heintzelman did not present any evidence acceptable under Civ.R. 56 demonstrating that "All–American Construction" or "The Home Medic" was a registered trade name or

---

3. Even assuming that Heintzelman was able to assert this claim as an affirmative defense, there was no supporting evidential documentation in his response to the partial summary judgment that validates his claim. Thus, Heintzelman was unable to establish a genuine issue of material fact as required by Civ.R. 56. See, e.g., *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264.

reported fictitious name of All–American Environmental, Inc. See, e.g., R.C. 1329.01.

{¶ 28} Moreover, this claim was never timely raised as an affirmative defense. Therefore, as mentioned previously, Heintzelman was precluded from raising this affirmative defense as part of the Civ.R. 56 exercise.

{¶ 29} More important, Heintzelman failed to disclose to Stanwade that he was simultaneously and interchangeably acting as an agent for All–American Environmental, Inc., Environmental Construction, All–American Construction, The Home Medic, or himself.

{¶ 30} "[W]here there is an undisclosed principal (i.e. no evidence of agency and no mention of principal), the agent is liable." *Promotion Co., Inc. v. Sweeney*, 150 Ohio App.3d 471, 2002-Ohio-6711, 782 N.E.2d 117, at ¶ 23. This court has previously held that " 'the corporate officer has a responsibility to *clearly* identify the capacity in which he is dealing in a specific transaction * * *.' *Universal Energy Serv., Inc. v. Camilly* (May 3, 1991), Ashtabula App. No. 90–A–1533, unreported, at 7, 1991 WL 70787. The failure to comply with this rule will expose the corporate officer to individual liability on the resulting contract." Id. (Emphasis added.) *Hommel v. Micco* (1991), 76 Ohio App.3d 690, 697, 602 N.E.2d 1259. Accordingly, when a party's complaint presents allegations of the opposing party corporate officer's individual liability, the burden of proving the existence of a corporate shield lies with the corporate officer. Id. at 698, 602 N.E.2d 1259.

{¶ 31} As demonstrated by Heintzelman's admissions and deposition testimony, he represented numerous principals interchangeably throughout the entire transaction. In short, regardless of the corporate standing of All–American Environmental, Inc., or Environmental Construction, and regardless of which corporation entered into the transaction, Heintzelman failed to continually disclose his floating representative agency status, to the detriment of Stanwade. Thus, he is personally liable.

{¶ 32} Furthermore, Heintzelman's use of unregistered trade names or unreported fictitious names offers no protection from personal liability. Although a party may do business under a trade name or fictitious name if it chooses, " '[d]oing business under another name does not create an entity distinct from the person operating the business. The individual who does business as a sole proprietor under one or several names remains one person, personally liable for all his obligations.' " *Patterson v. V. & M Auto Body* (1992), 63 Ohio St.3d 573, 575, 589 N.E.2d 1306, quoting *Duval v. Midwest Auto City, Inc.* (D.Neb. 1977), 425 F.Supp. 1381, 1387. Accordingly, Heintzelman is personally liable

regardless of his doing business as "The Home Medic" or as "All American Construction."

{¶ 33} In conclusion, per our previous analysis, Heintzelman waived the affirmative defense that All American Environmental, Inc., was the principal in this transaction. Accordingly, regardless of its corporate status, Heintzelman could not assert that he was immune from personal liability based upon the corporate shield provided by All American Environmental, Inc.

{¶ 34} Furthermore, it is clear that Heintzelman used his position as the principal officer for various separate corporations and unregistered trade names or fictitious names interchangeably throughout this transaction. Thus, Heintzelman should be held personally liable for the damages incurred. To hold otherwise would allow an individual officer to use the privilege of incorporation and registered trade names to engage in deceptive behavior, while protecting the officer from individual liability via the corporate shield.

{¶ 35} Heintzelman's sole assignment of error is without merit. We hereby affirm the judgment of the trial court granting Stanwade Metal Products, Inc., partial summary judgment.

Judgment affirmed.

RICE, J., concurs.

GRENDELL, J., dissents.

DIANE V. GRENDELL, JUDGE, dissenting.

{¶ 36} I respectfully dissent.

{¶ 37} Stanwade Metal Products, Inc. ("Stanwade") sold a storage tank worth $19,258.26 to Environmental Construction and Design, Inc. ("Environmental Construction") and was never paid. The one undisputed fact in this case is that Stanwade is owed $19,258.26, plus interest. The issue raised by Stanwade's motion for partial summary judgment is whether Heintzelman, Environmental Construction's sole shareholder, is personally liable for the money owed to Stanwade.

{¶ 38} In their zeal to find Heintzelman, an unsympathetic defendant, personally liable for the money owed to Stanwade, the majority ignores the arguments raised in Stanwade's motion for summary judgment and, through de novo review, renders a judgment on the pleadings in favor of Stanwade.

{¶ 39} In the third count of its complaint, Stanwade alleged that Heintzelman fraudulently purchased the storage tank from Stanwade, as a representative of Environmental Construction, and then sold the tank "individually and under a trade name" to Garner Transportation Group, Inc. ("Garner Trucking"). Specifi-

cally, Stanwade alleged that Heintzelman represented that Environmental Construction would resell the tank to Garner Trucking and that Environmental Construction would pay Stanwade upon receipt of the funds from Garner Trucking. In his answer, Heintzelman denied all the allegations contained in the third count of the complaint.

{¶ 40} Heintzelman's answer also raised, as affirmative defenses, the claims that Heintzelman "never conducted business as an individual" and that at the "time of ordering equipment from [Stanwade], [Heintzelman] informed [Stanwade] that All–American Construction, Inc. would be performing and billing for work completed." In his deposition, Heintzelman explained that it was Stanwade's decision to invoice the sale of the tank to Environmental Construction: "When I talked to Pete Hunkas [Stanwade's sales representative], I told him that [Environmental Construction] no longer did business. He said that's fine, we'll just keep it on [Environmental Construction's account]. [I] said that's up to you, but it's All American that's doing the work."

{¶ 41} Stanwade would also have been apprised that Environmental Construction was not the true principal behind the transaction when the checks issued by Heintzelman to pay for the tank bore the trade name "The Home Medic."

{¶ 42} Despite Heintzelman's denials, affirmative defense, and deposition testimony, the majority concludes that Heintzelman is personally liable because he "failed to continuously disclose his floating representative agency status, to the detriment of Stanwade." In light of the preceding evidence, the only reasonable conclusion is that Heintzelman has raised a genuine issue of material fact as to whether he disclosed the true nature of his agency to Stanwade at the time the tank was purchased.

{¶ 43} The majority avoids this difficulty by declaring that Heintzelman failed to assert, and hence waived, as an affirmative defense "the argument that All–American Environmental, Inc., using the trade name 'All–American Construction' and 'The Home Medic,' was a principal in this transaction."

{¶ 44} This claim can be supported only by the most specious logic. As shown above, Heintzelman denied Stanwade's allegation that he fraudulently misrepresented that Environmental Construction was the principal in the transaction.[4] Moreover, Heintzelman, both as an affirmative defense and in his deposition, maintains that he informed Stanwade that Environmental Construction was not the true principal. The majority argues that, although Heintzelman asserted the affirmative defense in respect to All–American Construction and The Home Medic, "Heintzelman never asserted by answer or amendment the role of All–

---

4. Stanwade has not introduced any evidence, aside the allegation in the complaint, to support its claim that Heintzelman misrepresented the true principal behind the transaction.

American Environmental, Inc. as an additional affirmative defense." Therefore, the majority concludes, Heintzelman cannot rely on the argument that he disclosed the true principal in the transaction to Stanwade and is personally liable under the majority's theory of undisclosed agency.

{¶ 45} The flaws in this argument are several. In the first place, the claim that All–American Construction or All–American Environmental is the true principal is not an affirmative defense. Civ.R. 8(C) provides the following nonexhaustive list of affirmative defenses: "accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, want of consideration for a negotiable instrument, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense." All these defenses have the character of being legal impediments to otherwise valid claims.[5] Disclosure of the true principal is not a legal impediment to a valid claim; rather, it disputes the validity of the claim. Stanwade and the majority claim that Heintzelman is personally liable because he failed to disclose the true principal. Heintzelman disputes the factual basis of that claim. This argument is not an affirmative defense and cannot be waived. Therefore, it does not matter whether Heintzelman makes this argument in his answer, in his deposition testimony, in his response to summary judgment, or, as in this case, in all three places.

{¶ 46} In the second place, Stanwade has been fairly apprised of Heintzelman's argument that Environmental Construction is not the true principal, since Heintzelman filed his answer. It does not matter, as the majority suggests, whether the true principal is All–American Construction, The Home Medic, or All–American Environmental. Nor does it matter whether Heintzelman has demonstrated with acceptable Civ.R. 56 evidence that " 'All–American Construction' or 'The Home Medic' was a registered trade name or reported fictitious name of All–American Environmental." None of these entities are defendants in this case.

{¶ 47} Herein lies the reason why summary judgment is not appropriate in this case under Stanwade's theory that All–American Construction and All–American Environmental were not corporations in good standing at the time of the sale as well as under the majority's theory of undisclosed principal. Stanwade filed suit only against Environmental Construction and Heintzelman. Stanwade's theory of Heintzelman's personal liability is essentially the same as the majority's

---

5. Cf. Black's Law Dictionary's definition of an affirmative defense: "[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." (7th Ed.1999) 430.

undisclosed-principal theory: Heintzelman fraudulently misrepresented to Stanwade the true principal in the transaction. Heintzelman denied this in his answer and in his deposition. A genuine issue of material fact having been raised on this issue, Stanwade advanced an alternative theory of liability when it moved for partial summary judgment. Stanwade argued that the entities Heintzelman claims were the true principals were not corporations in good standing. However, because neither All-American Construction nor All-American Environmental is a defendant in this case, their corporate status cannot be the basis for Heintzelman's personal liability.

{¶ 48} The majority has endeavored to find in Stanwade's favor by advancing the fraudulent-representation theory under the guise of an undisclosed principal. The problem is that there is absolutely no evidence outside of the complaint that Heintzelman misrepresented the true principal in this transaction. The majority circumvents this problem by unconvincingly declaring that, as matter of law, Heintzelman is not entitled to oppose the argument that he failed to disclose the true principal.

{¶ 49} Few people would approve of the way in which Heintzelman conducts his business. Mere disapproval, however, is not an adequate justification under Ohio law for imposing personal liability on a corporate shareholder. For these reasons, I respectfully dissent.