[Cite as *HSBC Mtge. Corp. v. Latona*, 2016-Ohio-3137.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| HSBC Mortgage Corporation USA, | : | |
| Plaintiff-Appellee, | : | No. 15AP-401 |
| | | (C.P.C. No. 10CV-16807) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Anthony Latona et al., | : | |
| Defendants-Appellants, | : | |
| Household Realty Corporation et al., | : | |
| Defendants-Appellees. | : | |

## D E C I S I O N

### Rendered on May 24, 2016

**On brief:** *McGlinchey Stafford*, and *James W. Sandy*, for appellee HSBC Mortgage Corporation USA. **Argued:** *James W. Sandy*

**On brief:** *Doucet & Associates, Co., LPA*, and *Andrew J. Gerling*. **Argued**: *Audrey J. Balint*

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Anthony and Trina R. Latona, defendants-appellants, appeal the judgment of the Franklin County Court of Common Pleas, in which the court granted the motion for summary judgment filed by HSBC Bank USA, N.A. ("HSBC"), plaintiff-appellee.

{¶ 2} On August 19, 1998, appellants executed a note in the amount of $346,500 that was secured by a mortgage on the residential property. Priority Mortgage Corporation ("Priority") was the holder of the note and mortgage. Priority Mortgage assigned the note and mortgage to Marine Midland Corporation ("Marine") on the same

day. In March 1999, Marine changed its name to HSBC Mortgage Corporation USA ("HSBC Mortgage"). Appellants subsequently defaulted. During the course of litigation, HSBC Mortgage assigned the note and mortgage to HSBC.

{¶ 3}   On April 16, 2010, the parties entered into a loan modification agreement, which amended the terms of the original note and mortgage, reducing the monthly principal, interest payment, and interest rate. The agreement specified that payments were to begin on March 1, 2010, and appellants were to make a down payment in the amount of the new mortgage within five business days. Appellants made a total of five payments from May to September 2010 with appellant making two payments in July 2010.

{¶ 4}   On November 16, 2010, HSBC filed a complaint for foreclosure against appellants. On October 29, 2013, HSBC filed a motion for summary judgment, which the trial court denied. On April 1, 2014, a magistrate conducted a bench trial.  At trial, HSBC's only witness was Arlene Tolbert, the default legal department's complex representative for PHH Mortgage Corporation ("PHH"), the loan servicer for HSBC on appellants' mortgage. Appellants did not appear personally at trial, although they were represented by counsel. Appellants' counsel did not call any witnesses, did not cross-examine Tolbert, and did not present any other evidence. On September 10, 2014, the magistrate issued a decision in favor of HSBC. Appellants filed objections to the magistrate's decision arguing that the magistrate erred when she found appellants in default and when she admitted the business records at trial.

{¶ 5}   On March 17, 2014, the trial court overruled appellants' objections and adopted the magistrate's decision. Appellants appeal the judgment of the trial court, asserting the following assignments of error:

> [I.]    The trial court erred when it found Plaintiff-Appellee HSBC Bank USA ("HSBC")'s witness – an employee of PHH Mortgage Corporation ("PHH") which is an entity separate from HSBC – possessed sufficient personal knowledge to authenticate purported business records of HSBC's predecessor-in-interest, that he had any working knowledge of the record-keeping system, that he testified about the regularity and reliability of the business activity involved, that the documents were in any way trustworthy, or that PHH relied upon the documents in its business dealing other than for the purpose of litigation.

> [II.] The trial court's finding that Anthony Latona and Trina R. Latona ("the Latonas") defaulted on the Loan Modification was against the manifest weight of the evidence.

{¶ 6} Appellants argue in their first assignment of error that the trial court erred when it found the testimony of Tolbert—an employee of HSBC's loan servicer, PHH—was sufficient to authenticate the business records created by HSBC and the previous servicers of the mortgage loan. Appellants claim that Tolbert had no personal knowledge of the facts, had never been an employee of HSBC or any previous loan servicers, had no knowledge of the record-keeping systems of HSBC or the previous loan servicers, and offered no testimony regarding the regularity and reliability of the business activity involved in the creation of the documents about which she testified. Thus, appellants claim, the records of HSBC and the previous loan servicers constituted hearsay.

{¶ 7} Tolbert testified that she maintained appellants' account for PHH, and PHH relies upon the prior servicers' records to service appellants' account. She then identified the promissory note, the mortgage, the assignment of mortgage, the breach letter, and the loan modification agreement, and described the contents of each document. She also testified as to appellants' payment history.

{¶ 8} We find the trial court properly admitted Tolbert's testimony, and such was sufficient to authenticate the document. The records constituted an exception to the hearsay prohibition as records of regularly conducted activity pursuant to Evid.R. 803(6). Hearsay is any statement, other than one which is made by the declarant at trial, which is offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Under Evid.R. 802, hearsay is inadmissible unless it falls within an exception provided by the rules of evidence. Evid.R. 803(6) provides an exception to the hearsay rule for business records of regularly conducted activity and provides:

> **Records of regularly conducted activity**. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule

901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

{¶ 9} To qualify for the business records exception, a record must meet the following criteria: (1) the record must be one recorded regularly in a regularly conducted activity, (2) a person with knowledge of the act, event, or condition recorded must have made the record, (3) it must have been recorded at or near the time of the act, event, or condition, and (4) the party who seeks to introduce the record must lay a foundation through testimony of the record custodian or some other qualified witness. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 171. Even when these prerequisites are met, however, the trial court may exclude a record "if 'the source of information or the method or circumstances of preparation indicate [a] lack of trustworthiness.' " *Id.* at ¶ 170, quoting Evid.R. 803(6). A trial court abuses its discretion when it admits a business record in the absence of an adequate foundation to establish admissibility under Evid.R. 803(6). *State v. Myers*, 153 Ohio App.3d 547, 2003-Ohio-4135, ¶ 58 (10th Dist.).

{¶ 10} Here, appellants contest that Tolbert was a qualified witness because she did not have sufficient personal knowledge to authenticate the records. Evid.R. 901 governs authentication or identification of evidence. It states "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). Evid.R. 901(B)(1) provides that the testimony of a witness with knowledge, who testifies that a matter is what it is claimed to be, conforms with the requirements of Evid.R. 901. Thus, " 'any competent witness who has knowledge that a matter is what its proponent claims may testify to such pertinent facts, thereby establishing, in whole or in part, the foundation for identification.' " *TPI Asset Mgt. v. Conrad-Eiford*, 193 Ohio App.3d 38, 2011-Ohio-1405, ¶ 15 (2d Dist.), quoting Weissenberger's Ohio Evidence Treatise, Section 901.2 (2010).

{¶ 11} In the present case, Tolbert testified that the copy of the documents admitted at trial were true and accurate copies of the originals. Evid.R. 1003 governs the admissibility of duplicates, and provides that a "duplicate is admissible to the same extent

as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." The party seeking to exclude a duplicate has the burden of demonstrating that the duplicate should be excluded. *State v. Tibbetts*, 92 Ohio St.3d 146, 160 (2001). The party seeking to exclude a duplicate cannot rely on mere speculation as to its authenticity. *See* Evid.R. 1003, and *State v. Easter*, 75 Ohio App.3d 22, 27 (4th Dist.1991). Furthermore, "the decision to admit duplicates, in lieu of originals, is one that is left to the sound discretion of the trial court." *Id.*

{¶ 12} Here, appellants do not raise any specific issue about the actual authenticity of the business records and do not contend that it would be unfair under the circumstances to accept the duplicate in lieu of the original. Appellants' only arguments relate to whether Tolbert was qualified to authenticate the documents because she lacked firsthand knowledge regarding their creation. Appellants fail to set forth any bona fide argument that the documents are not what they purport to be. There exists competent authority that a loan servicing agent may properly authenticate copies of business records. The testimony of the bank's loan servicing agent provides a sufficient foundation for the admissibility of the relevant loan documents as business records under Evid.R. 803(6). *See, e.g., Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. No. 98502, 2013-Ohio-1657, ¶ 39; *Fifth Third Mtge. Co. v. Bell*, CA2013-02-003, 2013-Ohio-3678, ¶ 28 (loan servicing agent's affidavit properly authenticated the attached documents, including the note and mortgage); *U.S. Bank, N.A. v. Martin*, 7th Dist. No. 13 MA 107, 2014-Ohio-3874, ¶ 34 (summary judgment affidavit of loan servicer's employee was sufficient to authenticate notice of intent to accelerate, where affidavit stated that the copy of the notice of intent to accelerate was a true and accurate copy of notice); *Regions Bank v. Seimer*, 10th Dist. No. 13AP-542, 2014-Ohio-95, ¶ 19, citing *Bank of New York v. Dobbs*, 5th Dist. No. 2009-CA-000002, 2009-Ohio-4742, ¶ 40 (even though not employed by the bank, affidavit of bank's loan servicing agent was sufficient to authenticate documents). It is clear that a witness providing the foundation for a recorded business activity need not have firsthand knowledge of the transaction. *Najar* at ¶ 39, citing *U.S. Bank N.A. v. Wilkens*, 8th Dist. No. 96617, 2012-Ohio-1038, ¶ 46, citing *Moore v. Vandemark Co., Inc.*, 12th Dist. No. CA2003-07-063, 2004-Ohio-4313, ¶ 18. We recently used this same analysis in *Fannie*

*Mae v. Bilyk*, 10th Dist. No. 15AP-11, 2015-Ohio-5544. Thus, we find that Tolbert properly authenticated the copies of the business records admitted at trial. For all of the foregoing reasons, we find the trial court did not err when it relied upon Tolbert's testimony in admitting the business records. Therefore, appellants' first assignment of error is overruled.

{¶ 13} Appellants argue in their second assignment of error that the trial court's finding that appellants defaulted on the loan modification was against the manifest weight of the evidence. Appellants present two arguments. In its first argument, appellants contend that HSBC cannot establish that a default occurred. Appellants allege that under the terms of the modification agreement, they were to pay HSBC $2,349.63 per month, with payments beginning the first day of March 2010, but the modification agreement did not take effect until April 16, 2010, so payments were to actually begin in May 2010. Appellants point out that they made payments of $2,349.63 on May 19, June 10, July 15, July 29, and September 10, 2010; thus, they cured any prior default.

{¶ 14} Appellants' second argument is that the magistrate erred by finding that they were in default from the date of July 1, 2010, which they claim appears to be an arbitrary date. Pointing to the same evidence as above, appellant contends that after the April 16, 2010 effective date of the loan modification, appellants made all payments through September 2010.

{¶ 15} However, pursuant to Rule 8(C) of the Ohio Rules of Civil Procedure, payment is an affirmative defense. "The affirmative defense of payment must be pleaded in a party's answer or by amendment under Civ. R. 15 or it waived." *Blackwell v. Internatl. Union, United Auto Workers Local No. 1250*, 21 Ohio App.3d 110, 111 (8th Dist.1984). Appellants did not plead payment as an affirmative defense in their answer. Thus, the court finds that appellants waived the affirmative defense of payment. In addition, contrary to appellants' claim that it was sufficient that they raised payment as a defense to HSBC's motion for summary judgment, an affirmative defense may not be raised initially in summary judgment proceedings. *See Stanwade Metal Prods., Inc. v. Heintzelman*, 158 Ohio App.3d 228, 2004-Ohio-4196, ¶ 22.

{¶ 16} Notwithstanding, even if appellants did not waive the defense of payment, their arguments are without merit. The trial court's finding that appellants were in default

as of July 1, 2010 does not appear to be arbitrary. As explained by HSBC, the parties entered into the loan modification in March 2010, with an effective date of April 16, 2010. The loan modification required a down payment and payments beginning in March 2010. Appellants failed to make the down payment and the loan payments for March and April 2010. Therefore, there were eight payments due under the terms of the modification agreement (down payment, March 2010 mortgage payment, April 2010 mortgage payment, May 2010 mortgage payment, June 2010 mortgage payment, July 2010 mortgage payment, August 2010 mortgage payment, and September 2010 mortgage payment), but appellants made only five payments (May 19, 2010; June 10, 2010, July 15, 2010, July 29, 2010, and September 10, 2010). Thus, the trial court applied appellants' five payments to the first five payments due, which left appellants in default as of July 2010. Appellants' rationale that the first payment due under the modification was the May 2010 payment is unsupported by the terms of the loan modification agreement, which specifically indicates that appellants were required to pay a down payment in addition to monthly payments beginning in March 2010. Therefore, we find appellants waived their affirmative defense of payment, and, even if they had appropriately pled the defense, the trial court did not err when it found appellants in default as of May 2010. For these reasons, we overrule appellants' second assignment of error.

{¶ 17} Accordingly, appellants' two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DORRIAN, P.J., and LUPER SCHUSTER, J., concur.

_____