OPINION
{¶ 1} Arthur Chandler ("Chandler") appeals the judgment of the Geauga County Common Pleas Court, which found in favor of appellee, Daniel Stypula ("Stypula"), on Stypula's claim to pierce the corporate veil of Chandler Associates, Inc., ("C A"), and impose personal liability on Arthur Chandler. We affirm.
 {¶ 2} Chandler founded C A in 1961. C A was incorporated in 1984. Chandler was the sole shareholder of C A until 1996. Chandler incorporated The Chandler Group, Inc., ("The Group"). The Group acquired the stock of C A in 1996. Chandler is the sole shareholder of The Group. Chandler was the sole director of C A and The Group. In November 1996, Western Reserve Benefits Administrators, Inc., ("Western Reserve") was incorporated. The Group was the sole shareholder of Western Reserve.
 {¶ 3} On November 8, 1996, C A closed its doors. All of its employees were instructed to apply for positions at Western Reserve which took over C A's business on November 11, 1996.[1] The Group later sold Western Reserve.
 {¶ 4} On August 26, 1996, the Cuyahoga County Common Pleas Court entered judgment for $450,000 in favor of Stypula and against C A. The Eighth District Court of Appeals revised the judgment to $462,937.40. Chandler Assocs. v. America's Healthcare Alliance
(1997), 125 Ohio App.3d 572.
 {¶ 5} Subsequently, Stypula filed suit in Geauga County against Chandler, C A, The Group, Western Reserve, and others seeking to pierce the corporate veil of C A to hold Chandler personally liable for the judgment, and to impose successor liability on Western Reserve. Stypula also alleged claims of fraudulent transfers.
 {¶ 6} After a bench trial, the Geauga County Common Pleas Court entered judgment in favor of Stypula on his claim to pierce the corporate veil. Thus, the trial court found that Chandler was personably liable for the original judgment. The trial court found against Stypula on his remaining claims. Chandler appeals the trial court's judgment asserting three assignments of error:
 {¶ 7} "[1.] The trial court erred in piercing the corporate veil of Chandler Associates, Inc.[,] as the record evidence does not support the finding that Arthur Chandler so dominated or controlled Chandler Associates, Inc.[,] that it had no separate mind, will, or existence of its own per the test set out in Belvedere Condominium UnitOwners' Assn. v. R.E. Roark Co.
 {¶ 8} "[2.] The trial court erred when it pierced the corporate veil of Chandler Associates, Inc.[,] where the record does not support the finding that Arthur Chandler dominated or controlled Chandler Associates, Inc.[,] so as to commit fraud or [an] illegal act.
 {¶ 9} "[3.] The trial court erred in piercing the corporate veil of Chandler Associates, Inc.[,] as the record does not show that Mr. Stypula suffered a loss as a result of the acts of Arthur Chandler or Chandler Associates, Inc."
 {¶ 10} Chandler simply argues that the trial court's judgment was against the manifest weight of the evidence on each of the three elements required to pierce the corporate veil.
 {¶ 11} When we consider a manifest weight argument, we will not reverse the trial court's judgment if the decision is supported by some competent, credible evidence going to all essential elements of the case. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,280. This standard rests on the strong presumption that the trial court, as the trier of fact, is best able to weigh the evidence presented, assess the credibility of the witnesses, and make an informed factual determination therefrom. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. See, also, Wallbrown v. Kent State Univ. (2001),143 Ohio App.3d 762, 768.
 {¶ 12} To pierce the corporate veil and impose personal liability on a shareholder, the burden is on the party seeking to pierce the corporate veil to prove, by a preponderance of the evidence that:
 {¶ 13} "* * * (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." Belvedere Condominium Assn. v. R.E. Roark Cos., Inc.
(1993), 67 Ohio St.3d 274, paragraph three of the syllabus.
 {¶ 14} In his first assignment of error, Chandler argues that the record does not support the trial court's finding that Chandler exercised such complete control over C A that C A had no separate mind, will, or existence of its own. This is sometimes referred to as the "alter ego" prong. See Belvedere, at 287.
 {¶ 15} Stypula presented evidence that Chandler was the sole shareholder and director of C A. While, "[a] corporation is a separate legal entity from its shareholder even where there is only one shareholder in the corporation," Humitsch v. Collier (Dec. 29, 2000), 11th Dist. No. 99-L-099, 2000 Ohio App. LEXIS 6196, 11, quoting Zimmermanv. Eagle Mtge. Corp. (1996), 110 Ohio App.3d 762, 771, some courts have held that this fact alone is sufficient to meet the first prong of theBelvedere test. See, e.g. Zimmerman, at 772, (stating, "The record is uncontroverted that Musgrave was the sole stockholder and director of Eagle and, as such, exercised complete control over Eagle's corporate affairs.") See, also, Intergy, Inc. v. Carrigan (Apr. 22, 1993), 8th Dist. No. 62210, 1993 Ohio App. LEXIS 2150.
 {¶ 16} In the instant case, Stypula presented additional evidence that Chandler exercised complete control over C A. Chandler testified that he chose to close C A and fire all of its employees in November 1996. Other employees of The Group supported this testimony. Testimony also established that Chandler set the salaries and benefits for employees. Stypula also presented evidence that C A was used as a means to channel large sums of money to Chandler as bonuses from other, non-related corporations, so as to save taxes.
 {¶ 17} While Chandler presented evidence to show that others played a role in the decision making process for C A, we cannot say that the trial court's decision finding that C A was merely the alter ego of Chandler was against the manifest weight of the evidence. Chandler's first assignment of error is without merit.
 {¶ 18} In his second assignment of error, Chandler argues that the trial court's finding that Chandler exercised his control over the corporation to commit fraud or an illegal act against Stypula is against the manifest weight of the evidence. While the trial court did not find for Stypula on his claim of fraudulent transfers, the trial court did find that Chandler used his control to "unlawfully deprive [Stypula] of the ability to enforce his judgment."
 {¶ 19} The second prong of the Belvedere test requires the party seeking to pierce the corporate veil to prove that the shareholder exercised the control established under the first prong of the test to commit fraud or other wrongful conduct. See, e.g., Cent. Benefits Mut.Ins. Co. v. RIS Admrs. Agency, Inc. (1994), 93 Ohio App.3d 397, 404;Intergy, Inc. at 5; Wiencek v. Atcole Co., Inc. (1996),109 Ohio App.3d 240, 244 (stating, "A more vexing problem is presented by the Supreme Court's use of the words `fraud or illegal act' in the second element. Did it intend to restrict attempts to pierce the corporate veil to only those acts which were fraudulent or illegal or did it intend to encompass a broader range of actions, namely those acts which would lead to unfair or inequitable consequences? The Belvedere opinion indicates the latter, that it intended to allow a corporate veil to be pierced when inequitable or unfair consequences had resulted.") We agree with the Sixth District's analysis in Wiencek that the corporate veil may be pierced when the acts would lead to unfair or inequitable consequences. The Court in Belvedere stated:
 {¶ 20} "That a corporation is a legal entity, apart from the natural persons who compose it, is a mere fiction, introduced for the convenience in the transaction of its business, and of those who do business with it; but like every other fiction of the law, when urged to an intent and purpose not within its reason and policy, may be disregarded. Under this exception, the `veil' of the corporation can be `pierced' and individual shareholders held liable for corporate misdeeds when it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity." (Internal quotations and citations omitted.) Id. at 287.
 {¶ 21} Here, Stypula presented evidence that Chandler decided to close C A only after Stypula received his judgment, in spite of Chandler's claims that C A had been losing money for years. Stypula also presented evidence that after C A closed and fired all of its employees on November 8, 1996, Western Reserve opened on November 11, 1996, hired all of C A's former employees but one, operated from the same offices, used the same equipment and telephone numbers, and had the same clients. Stypula also presented testimony that Chandler had told another employee that Stypula "wouldn't get a dime of his money."
 {¶ 22} The trial court found that Chandler used his dominion and control to unlawfully deprive Stypula of the ability to enforce his judgment. This is clearly an inequitable result, and an intent and purpose for which the corporate fiction cannot be used. The trial court's finding is not against the manifest weight of the evidence. Chandler's second assignment of error is without merit.
 {¶ 23} By adopting the rationale set forth in Weincek we do not expand the class of individuals who may be held liable under theBelvedere test. Belvedere does not expose innocent officers, directors, or shareholders of a corporation to liability when the corporate veil is pierced. The Belvedere test makes clear that only those persons who actually exercise dominion and control to commit the wrongful act may be held personally liable.[2]
 {¶ 24} In his third assignment of error, Chandler argues that the trial court's finding that Stypula suffered a loss as a result of Chandler's wrongful conduct is against the manifest weight of the evidence. We disagree.
 {¶ 25} Stypula had a judgment against C A of $462,937.40. Stypula presented evidence that he was unable to collect this judgment due to the closing of C A and the opening of Western Reserve. This clearly establishes an injury to Stypula. Therefore, Chandler's third assignment of error is without merit.
 {¶ 26} The trial court's finding that Stypula was permitted to pierce the corporate veil of C A, and hold Chandler personally liable was not against the manifest weight of the evidence. Therefore, the judgment of the Geauga County Court of Common Pleas is affirmed.
Judgment affirmed.
DONALD R. FORD, P.J., and JUDITH A. CHRISTLEY, J., concur.
[1] November 8, 1996, was a Friday. Western Reserve began operation the following Monday.
[2] See Gevurtz, Piercing Piercing: An attempt to Lift the Veil of Confusion Surrounding the Doctrine of Piercing the Corporate Veil (1997), 76 Ore. L. Rev. 853, 865-66, (stating, "* * * requiring control screens out piercing against the shareholders of a publicly traded corporation, who, as a practical matter, do not exercise control. This provides a doctrinal underpinning to explain the fact that there has never been a case in which the court pierced to hold shareholders in a public corporation liable for the company's debts.")