[Cite as *Williams v. Farmwald*, 2016-Ohio-7151.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| YABRIELLE WILLIAMS, et al., | : | **O P I N I O N** |
| | : | |
| Plaintiffs-Appellees, | : | **CASE NO. 2015-L-140** |
| | : | |
| - vs - | : | |
| | : | |
| MATTHEW FARMWALD, et al., | : | |
| | : | |
| Defendants-Appellants. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 13 CV 002590.

Judgment: Affirmed.

*Mitchell A. Weisman*, Ruminzen Weisman, 1600 Midland Building, 101 Prospect Avenue, West, Cleveland, OH 44115 (For Plaintiffs-Appellees).

*David M. Lynch*, 333 Babbitt Road, Suite 333, Euclid, OH 44123 (For Defendants-Appellants).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellants, Matthew Farmwald and Evolution Ultra Lounge, appeal from a decision of the Lake County Court of Common Pleas, finding them along with two other defendants jointly and severally liable for injuries suffered by appellees, Yabrielle

Williams, Yolanda Williams, Derrick Arthur, and Nicole Paul.[1]  For the reasons stated, we affirm.

**{¶2}**  On December 27, 2010, 15-year-old appellees Yabrielle Williams and Derrick Arthur attended "Teen Night" at appellant Evolution Ultra Lounge.  Teen Night was hosted/operated by appellant Matthew Farmwald and Storm 28611, Inc.[2]  Maurice Wright and four others were security guards at the club.

**{¶3}**  On the night at issue, club capacity was exceeded by approximately 150 people.  Some patrons wore gang insignias.  Several fights broke out.  Wright told Farmwald to close down the club early.  However, Farmwald refused.  As the night progressed, things grew more hectic.  Around 11:30 p.m., the scene was one of total confusion.  Parents entered the club looking for their children.  Fights were all over the place.  Security essentially broke down completely.

**{¶4}**  During the commotion, an unidentified patron re-entered the club, after being kicked out for fighting, and fired three gunshots into the crowd hitting Yabrielle Williams and Derrick Arthur.  Neither Williams nor Arthur provoked the shooter in any manner.  They each suffered injuries and incurred roughly $20,000 in medical bills.

**{¶5}**  On December 2, 2013, appellees filed a complaint against appellants and other defendants.[3]  The complaint alleged, inter alia, that appellants and defendants were negligent in one or more of the following respects: in permitting the creation of and/or the continuous existence of a dangerous condition; in failing to properly and

---

1. The two other defendants are Maurice Wright and Storm 28611, Inc.  They are not named parties in this appeal.  Also, we note that Yolanda Williams is Yabrielle Williams' mother.  Nicole Paul is Derrick Arthur's mother.

2. Farmwald is the sole officer of Storm 28611, Inc.

3. The other defendants included Maurice Wright, Storm 28611, Inc., and Alpha Protection.

adequately warn appellees of a dangerous condition; in permitting the creation of and/or the continuous existence of negligent security measures; in supervising and/or training security guards; and in failing to call the police and in the handling of the emergency incident. Appellants and Storm 28611, Inc. filed an answer to the complaint.

**{¶6}** The matter proceeded to a bench trial which was held on July 14, 2015.

**{¶7}** On November 20, 2015, the trial court granted judgment in favor of appellees. The court found Matthew Farmwald, Maurice Wright, and Storm 28611, Inc. jointly and severally liable and ordered that they pay damages in the amount of $65,000 to Yabrielle Williams, $80,000 to Derrick Arthur, $10,000 to Yolanda Williams, and $10,779.04 to Nicole Paul.

**{¶8}** Appellants filed this appeal and assert the following assignment of error:[4]

**{¶9}** "The Trial Court improperly found Matthew Farmwald personally liable for negligence when he had an active Corporation in Ohio formed to shield him from personal liability."

**{¶10}** Appellants Matthew Farmwald and Evolution Ultra Lounge allege the trial court erred in finding Farmwald personally liable to appellees for negligence because he should have been shielded by his active corporation, Storm 28611, Inc.[5]

---

4. Neither the November 20, 2015 judgment entry nor the record reflected that the claims against appellant Evolution Ultra Lounge and defendant Alpha Protection were resolved. Thus, this court issued a judgment entry on January 28, 2016 sua sponte remanding the matter to the trial court for a dispositional ruling as to Evolution Ultra Lounge and Alpha Protection. In compliance with this court's remand, on February 1, 2016, the trial court dismissed Alpha Protection and found Evolution Ultra Lounge jointly and severally liable with Matthew Farmwald, Maurice Wright, and Storm 28611, Inc. for the injuries suffered by appellees and ordered that they pay damages in the amount of $65,000 to Yabrielle Williams, $80,000 to Derrick Arthur, $10,000 to Yolanda Williams, and $10,779.04 to Nicole Paul.

5. We note that the issue as to Storm 28611, Inc.'s status as an active corporation was not mentioned in the complaint or answer. Rather, appellees indicated in their July 28, 2015 proposed "Findings of Fact and Conclusions of Law" that although Farmwald testified during trial that he incorporated Storm 28611, Inc. to operate Evolution Ultra Lounge as a club, he offered no evidence that a corporation existed. Appellants mentioned in their July 28, 2015 proposed "Findings of Fact and Conclusion of Law," that

3

{¶11} """""To prevail on a claim for negligence the plaintiff must prove the following elements: (1) the existence of a duty owed by the defendant to the plaintiff, (2) the breach of duty, (3) causation, and (4) damages."""""" (Citations omitted.) *Daher v. Bally's Total Fitness*, 11th Dist. Lake No. 2014-L-061, 2015-Ohio-953, ¶21.

{¶12} Appellant Matthew Farmwald seeks to escape personal liability alleging he is entitled to corporate immunity as the president of Storm 28611, Inc. At issue is whether the trial court's judgment was against the manifest weight of the evidence on each of the three elements required to pierce the corporate veil.

{¶13} "When we consider a manifest weight argument, we will not reverse the trial court's judgment if the decision is supported by some competent, credible evidence going to all essential elements of the case. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280 * * *. This standard rests on the strong presumption that the trial court, as the trier of fact, is best able to weigh the evidence presented, assess the credibility of the witnesses, and make an informed factual determination therefrom. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80 * * *. See, also, *Wallbrown v. Kent State University* (2001), 143 Ohio App.3d 762, 768 * * *." (Parallel citations omitted.) *Stypula v. Chandler*, 11th Dist. Geauga No. 2002-G-2468, 2003-Ohio-6413, ¶11.

---

Storm 28611, Inc. is an active corporation and attached documentation from the Ohio Secretary of State showing its active status. Although Farmwald had no burden to establish Storm 28611, Inc.'s active status, the trial court nevertheless pointed out in its November 20, 2015 judgment entry that there was no proof introduced at trial that Storm 28611, Inc. was an active corporation at the time of the incident. However, as stated, the record reveals that Farmwald submitted the Articles of Incorporation for Storm 28611, Inc. after the trial was completed and before the trial court rendered its decision finding appellants, Maurice Wright, and Storm 28611, Inc. jointly and severally liable. Thus, the foregoing does not affect this court's judgment here as the trial court essentially found that Storm 28611, Inc. is an active corporation and properly analyzed the matter under a *Belvedere* analysis. *Belvedere Condominium Unit Owners' Assoc. v. R.E. Roark Cos.*, 67 Ohio St.3d 274 (1993).

4

{¶14} The Ohio Supreme Court explained the concept of piercing the corporate veil in order to reach an individual in *Belvedere, supra,* at 287 as follows:

{¶15} "A fundamental rule of corporate law is that, normally, shareholders, officers, and directors are not liable for the debts of the corporation.  * * * An exception to this rule was developed in equity to protect creditors of a corporation from shareholders who use the corporate entity for criminal or fraudulent purposes.  'That a corporation is a legal entity, apart from the natural persons who compose it, is a mere fiction, introduced for convenience in the transaction of its business, and of those who do business with it; but like every other fiction of the law, when urged to an intent and purpose not within its reason and policy, may be disregarded.'  * * * Under this exception, the 'veil' of the corporation can be 'pierced' and individual shareholders held liable for corporate misdeeds when it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity."  (Internal citations omitted.)

{¶16} The Ohio Supreme Court set forth **a** three-prong test in *Belvedere*.  To pierce the corporate veil and impose personal liability on a shareholder, the burden is on the party seeking to pierce the corporate veil to prove, by a preponderance of the evidence that:

{¶17} "(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Belvedere, supra,* at 289**;** *Stypula, supra,* at ¶13.

{¶18} The Ohio Supreme Court later expanded the second prong of the *Belvedere* test. In *Dombroski v. Wellpoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, ¶29, the Court held that "to fulfill the second prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act."

{¶19} "The first prong of the *Belvedere* test is often referred to as the 'alter ego doctrine.' *Frechette v. Kovanda* (Apr. 18, 2001), Summit App. No. 20207, 2001 Ohio App. LEXIS 1774. To satisfy this requirement, a plaintiff must show that the individual and the corporation 'are fundamentally indistinguishable.' Id. In *LeRoux's Billyle Supper Club v. Ma* (1991), 77 Ohio App.3d 417, 422-423, * * *, the court noted some of the factors used to determine if this standard has been met:

{¶20} "(* * *) (1) Grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s)." (Parallel citation omitted.) *Sanderson Farms, Inc. v. Gasbarro*, 10th Dist. Franklin No. 01AP-461, 2004-Ohio-1460, ¶26.

{¶21} With respect to the first prong of the *Belvedere* test, the trial court stated the following in its November 20, 2015 judgment entry:

6

{¶22} "Here, the evidence showed that: 1) there was a failure to follow corporate formalities; 2) there was an absence of corporate records; and, 3) that Storm was a façade for Farmwald's operations. For example, * * * [n]o corporate records or minutes were introduced. No tax or accounting records were produced, and Farmwald paid his security guards in cash. There was no evidence that annual meetings were held, or that Storm even had a board of directors. In fact, Farmwald testified that he served as Storm's president, vice president, secretary and treasurer. The fact that he was the sole officer of the company also shows that his control over the corporation was complete, and that it had no separate mind, will, or existence of its own."

{¶23} The record establishes that the first prong of *Belvedere* was met. The corporate form may be disregarded and Farmwald held liable because control over Storm 28611, Inc. by Farmwald was so complete that the corporation has no separate mind, will, or existence of its own. *Belvedere, supra,* at 289. The first prong has further been met as Farmwald failed to follow corporate formalities; there was an absence of various corporate records, i.e., meeting minutes and tax records; there was grossly inadequate capitalization, i.e., no evidence of insurance; and Storm 28611, Inc. was a façade for Farmwald's operations. *Gasbarro, supra,* at ¶26.

{¶24} With respect to the second prong of the *Belvedere* test, the trial court stated the following in its November 20, 2015 judgment entry:

{¶25} "Farmwald claimed that [Wright] owned a company named Alpha Security and that Alpha and [Wright] were responsible for security at the event. However, the testimony and materials presented into evidence showed that Alpha did not exist at the time of the incident. Instead, [Wright] and the other security guards were either

7

Farmwald's employees, or, security was at best a joint endeavor between the guards and Farmwald.  Regardless, the evidence is clear that the guards were inadequately trained, unlicensed, and unprepared to handle the crowd they encountered.  The evidence is also clear that the plaintiffs would not have suffered any injuries if the security staff had been larger, if they had been better trained, or if the event had been shut down earlier when fights first began to break out.  The fact that these measures were not taken is proof that the security staff was negligent * * *.  Farmwald alleged that Storm operated the facility on the night of the incident.  If so, it should have provided more and better trained security.  Because it did not, the plaintiffs were injured.  * * * Farmwald hired too few security guards, and the ones there were not adequately trained.  There was testimony at trial that Farmwald exercised his control over Storm in this fashion simply to maximize his profits.  This in turn led to, at the least, an unjust or inequitable act in that the poor security hired by Farmwald in his effort to save money allowed the shooter to reenter the facility and harm the plaintiffs.  * * * Here, Farmwald had a duty to his under-age patrons to ensure their safety during Teen Night.  * * * [H]e breached that duty by hiring an inadequate security staff.  That breach was a tortious act and the security staff's lack of control and inability to properly check patrons entering the club directly led to the injuries suffered by the plaintiffs."[6]

{¶26} The record establishes that the second prong of *Belvedere* was met.  Farmwald exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act.  *Belvedere, supra,* at 289; *Dombroski, supra,* at ¶29.  Even assuming arguendo that was not the case, Farmwald could still "be held

6. It appears the trial court inadvertently used the name "Williams" in its judgment entry when referring to Wright.

8

liable personally for tortious acts he commits in relation to corporate business, even without piercing the corporate veil. *DeHoff v. Veterinary Hosp. Operations of Central Ohio, Inc.*, 10th Dist. No. 02AP-454, 2003-Ohio-3334, at ¶89. This occurs when use of the corporate form was not essential to the tort committed, and the corporate officer acted personally. Id. at ¶90." *Potter Fur & Roots, Inc. v. Potter Group Worldwide, Inc.*, 11th Dist. Portage No. 2005-P-0101, 2006-Ohio-4172, ¶36.

**{¶27}** With respect to the third prong of the *Belvedere* test, the trial court stated the following in its November 20, 2015 and February 1, 2016 judgment entries:

**{¶28}** "[J]udgment is proper against [Wright]. * * * [J]udgment is proper against Storm. * * * Farmwald is not entitled to corporate immunity. * * * Farmwald should be held personally liable for the plaintiffs' injuries. * * * Alpha Protection * * * was not in existence at the time of the incident at issue in this case. Therefore, no liability attaches to it. Evolution Ultra Lounge * * * was controlled by Matthew Farmwald and Storm 28611, Inc. when the incident occurred. Therefore, liability attaches to it."

**{¶29}** The record establishes that the third prong of *Belvedere* was met. Injury or unjust loss resulted to appellees from such control and wrong by Farmwald. *Belvedere, supra,* at 289.

**{¶30}** For the foregoing reasons, appellants' sole assignment of error is not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, J., concurs in judgment only,

TIMOTHY P. CANNON, J., concurring in judgment only with a Concurring Opinion.

_____

9

TIMOTHY P. CANNON, J., concurring in judgment only.

{¶31} I respectfully concur with the judgment of the majority.

{¶32} I write separately to focus on the fact that the trial court's November 20, 2015 order granting judgment in favor of appellees states, "there was no proof introduced at trial that Storm was an active corporation at the time of the incident." The trial court found Matthew failed to meet his burden to prove the existence of a corporate veil at trial, so it is not necessary to conduct an analysis of piercing the corporate veil under *Belvedere*.

{¶33} The notion of the corporate shield, or corporate veil, is an affirmative defense. *See HLC Trucking v. Harris*, 7th Dist. Belmont No. 01 BA 37, 2003 Ohio App. LEXIS 664, *16 (Feb.14, 2003), citing *Hommel v. Micco*, 76 Ohio App.3d 690, 698 (11th Dist.1991). "[W]hen a party's complaint presents allegations of the opposing party corporate officer's individual liability, the burden of proving the existence of a corporate shield lies with the corporate officer." *Stanwade Metal Prods. v. Heintzelman*, 158 Ohio App.3d 228, 2004-Ohio-4196, ¶30 (11th Dist.), citing *Hommel*, *supra*, at 698.

{¶34} Appellees' complaint named both Matthew individually and his corporation, Storm 28611, Inc., as parties. The complaint also demanded damages against "Defendants jointly and/or severally." Appellees' complaint alleged Matthew's individual liability. Therefore, to avoid individual liability, Matthew bore the burden of proving at trial that a corporate shield existed at the time of the incident.

10

{¶35} The trial court found Matthew provided insufficient evidence to prove a corporate shield existed at the time of the incident. We defer to the factual findings of the trier of fact, so long as there is evidence that the fact-finder deems credible to support those findings. *Seasons Coal*, *supra*, at 80. Because the record contains evidence that, if deemed credible, would support the trial court's decision, we should not interfere with that determination.

{¶36} I agree with the judgment of the majority, but respectfully believe the analysis should end with the determination that Matthew failed to prove the existence of a corporate veil at the time of the incident, thereby failing to establish his affirmative defense.