[Cite as *Shamrock v. Cobra Resources, L.L.C.*, 2022-Ohio-1998.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STEVEN H. SHAMROCK, et al., | **CASE NOS. 2020-T-0075** <br> **2020-T-0076** |
| Plaintiffs-Appellees, | |
| - v - | Civil Appeals from the <br> Court of Common Pleas |
| COBRA RESOURCES, LLC, | |
| Defendant-Appellant, | Trial Court No. 2016 CV 00690 |
| and | |
| STEVEN H. SHAMROCK, et al., | |
| Plaintiffs-Appellants, | |
| - v - | |
| COBRA RESOURCES, LLC, | |
| Defendant-Appellee. | |

## O P I N I O N

Decided: June 13, 2022
Judgment: Affirmed in part and reversed in part; remanded

*Ned C. Gold, Jr.*, The Gold Law Firm, 7011 East Market Street, Warren, OH 44484 (For Plaintiffs-Appellees/Plaintiffs-Appellants).

*J. Michael Thompson*, Henderson, Covington, Messenger, Newman & Thomas Co., LPA, 6 Federal Plaza Central, Suite 1300, Youngstown, OH 44503 (For Defendant-Appellant/Defendant-Appellee).

MARY JANE TRAPP, J.

{¶1} In this consolidated appeal, Plaintiffs-appellants/appellees, Steven

Shamrock ("Steven"), Victoria Shamrock ("Victoria") (collectively, "the Shamrocks"), and

Emerald S. Enterprises, LLC ("Emerald") (collectively, "the plaintiffs"), and defendant-appellee/appellant, Cobra Resources, LLC ("Cobra"), appeal from the following judgment entries of the Trumbull County Court of Common Pleas: (1) the February 23, 2018, judgment entry granting summary judgment to Cobra on the plaintiffs' claims and on Cobra's counterclaims against Emerald; (2) the August 23, 2019, judgment entry awarding damages to Cobra on its counterclaims against Emerald; and (3) the September 11, 2020, judgment entry granting summary judgment to the Shamrocks on Cobra's counterclaims.

{¶2} The plaintiffs assert five assignments of error, contending that the trial court erred (1) by finding that the mineral and surface estates of the property at issue in this case merged; (2) by finding that the "hereafter acquired" provision in the Shamrocks' mortgage encompassed the property's mineral estate; (3) by failing to find that the oil and gas lease between Emerald and Cobra was invalid as a result of undue influence and unconscionability; (4) by awarding Cobra its legal fees and expenses in contravention of the American Rule; and (5) by denying their request to amend their pleadings.

{¶3} Cobra asserts three assignments of error, contending that the trial court erred (1) by granting summary judgment sua sponte to the Shamrocks on Cobra's counterclaims; (2) by granting summary judgment to the Shamrocks based on lack of direct privity when the Shamrocks waived lack of privity as an affirmative defense; and (3) by denying summary judgment to Cobra based on lack of privity because the relevant contractual provisions are real covenants that run with the land and because horizontal and direct privity exist.

{¶4} After a careful review of the record and pertinent law, we find as follows:

2

{¶5}   The trial court did not err (1) by denying the plaintiffs' request to amend their pleadings; (2) by finding that the mortgage's "hereafter acquired" provision encompassed the property's mineral estate; (3) by allegedly misapplying the doctrine of merger; (4) by failing to invalidate the oil and gas lease based on undue influence and/or unconscionability; (5) by granting summary judgment to the Shamrocks due to their alleged waiver of an affirmative defense; (6) by denying summary judgment to Cobra on its counterclaims against the Shamrocks; or (7) by awarding Cobra its legal fees and expenses incurred in defending against the plaintiffs' claims.

{¶6}   However, the trial court did err (1) by granting summary judgment sua sponte to the Shamrocks on Cobra's counterclaims and (2) by awarding Cobra its attorney fees and expenses incurred in prosecuting its counterclaims against Emerald.

{¶7}   Thus, we affirm the trial court's February 23, 2018, judgment entry; reverse the trial court's September 11, 2020, judgment entry; and affirm in part and reverse in part the trial court's August 23, 2019, judgment entry.  We remand this matter to the trial court for further proceedings consistent with this opinion.

## Substantive Facts and Procedural History

{¶8}   This matter involves disputes over the mineral rights to approximately 69.36 acres of real property located on Shafer Road in Champion Township, Trumbull County, Ohio ("the Shafer Road property").

### *Initial Conveyances; Mortgage*

{¶9}   In December 2002, the trustees of the Hentosh Family Revocable Living Trust ("the Hentosh trustees") conveyed the Shafer Road property to the Shamrocks via

3

a general warranty deed. The Hentosh trustees expressly retained "all oil, gas and mineral rights" to the Shafer Road property.

{¶10} In June 2003, the Shamrocks borrowed funds from Geauga Savings Bank ("Geauga") and executed an "Open-End Mortgage and Security Agreement" ("the Geauga mortgage") encumbering several properties, including the Shafer Road property.

{¶11} In January 2004, the Hentosh trustees conveyed "all oil, gas, and mineral rights" relating to the Shafer Road property to the Shamrocks via a quit claim deed.

{¶12} The Shamrocks subsequently defaulted on their loan. Geauga foreclosed on its mortgage and purchased the Shafer Road property at a sheriff's sale in December 2007. The sheriff conveyed the Shafer Road property to Geauga pursuant to a "Deed on Decree of Order of Sale" recorded in April 2008. Geauga subsequently conveyed the Shafer Road property to Emerald via a limited warranty deed. Emerald's principal is Marlene Shamrock ("Ms. Shamrock"), who is Steven's mother.

### Oil and Gas Leases

{¶13} In January 2011, Julie Wessling ("Ms. Wessling"), a leasing agent for Cobra Leasing, LLC ("Cobra Leasing"), visited Ms. Shamrock's home and offered to lease the oil and gas rights to the Shafer Road property. Ms. Shamrock later testified during her deposition that she informed Ms. Wessling that she had just undergone surgery; she was taking pain medication (i.e., Oxycontin); and she did not believe she owned the mineral rights. Ms. Wessling later testified in her deposition that she did not recall talking to Ms. Shamrock about the property's title or being informed that Ms. Shamrock was on pain medication. Ms. Shamrock, on behalf of Emerald, ultimately signed a "Paid-Up Oil and Gas Lease" ("the Cobra lease") in favor of Cobra Leasing and received $400. The Cobra

4

lease was recorded in February 2011. Cobra Leasing subsequently assigned the lease to Cobra.

{¶14} According to Steven, he was unaware that his mother had signed the Cobra lease. He believed that he and Victoria still owned the Shafer Road property's mineral estate because Geauga's mortgage only encumbered the surface estate and not the mineral estate that the Shamrocks subsequently acquired. Thus, after foreclosing on its mortgage, Geauga only obtained ownership of the surface estate, which it then transferred to Emerald.

{¶15} According to Steven, BP America Production Company ("BP") began purchasing "deep-well" rights throughout Trumbull County and other parts of northeast Ohio. In April 2012, the Shamrocks entered into an "Oil and Gas Lease" with BP regarding the Shafer Road property. Pursuant to this lease, BP agreed to pay the Shamrocks a signing bonus of $3,900 per acre, subject to BP's determination that the Shamrocks had defensible title.

{¶16} At the end of September 2012, BP sent a letter to the Shamrocks notifying them of two title defects it had identified. The first title defect was the existence of the Cobra lease. BP requested that the Shamrocks obtain a partial release from Cobra. The second title defect was a gap in the chain of title. Emerald, as the successor in interest to Geauga, was the current record title owner of the Shafer Road property. BP requested that the Shamrocks record an instrument conveying the Shafer Road property to themselves. BP informed the Shamrocks that they had 60 days from their receipt of the letter to clear all title defects at their own cost and expense. Upon expiration of the 60 days, BP had 20 days to elect to waive the title defects or decline the lease.

5

{¶17} According to Steven, he angrily confronted Ms. Shamrock about the Cobra lease and ordered her to "undo" it. According to Ms. Shamrock, she "went on a quest" and "frantically" tried to get Cobra to quickly release the Cobra lease. Following negotiations, Cobra eventually agreed to release its "deep well" rights in exchange for $30,000. On January 31, 2013, Ms. Shamrock tendered payment, and Emerald and Cobra entered into a "Settlement and Release Agreement." On the same day, Emerald and Cobra signed and recorded a "Partial Surrender and Cancellation of Oil and Gas Lease," pursuant to which Cobra surrendered its rights to "subsurface depths 100 feet below the base of the Clinton-Medina formation and all deeper formations" but retained all other rights under the Cobra lease.

{¶18} On February 8, 2013, Emerald conveyed to the Shamrocks via warranty deed "all of [its] interest to all minerals of every kind and description, including but not limited to oil and gas, underlying" the Shafer Road property. According to Steven, however, BP had rescinded its offer to pay the signing bonus because the cure period had expired.

### The Litigation

{¶19} In 2016, the plaintiffs filed a complaint in the Trumbull County Court of Common Pleas, asserting claims against Cobra for promissory estoppel, extortion, slander of title, lost opportunity, interference with a business relationship, and breach of contract. The Shamrocks requested damages in the amount of $270,660 based on their inability to fulfill their agreement with BP. Emerald requested damages in the amount of $30,000 that Cobra "wrongfully extorted" and an order directing Cobra to release the Cobra lease.

6

Case Nos. 2020-T-0075, 2020-T-0076

{¶20} Cobra filed an answer, affirmative defenses, and counterclaims against the plaintiffs for breach of the warranty of title in the Cobra lease, breach of the covenant of quiet enjoyment in the settlement agreement, and breach of the release in the settlement agreement. Cobra alleged that the Cobra lease and the settlement agreement were binding on Emerald and "its successors." Cobra sought reimbursement of its costs, including attorney fees, in defending against the plaintiffs' claims and in bringing its counterclaims.

{¶21} The plaintiffs filed a reply to Cobra's counterclaims and asserted the affirmative defense of lack of consideration for the warranties.

{¶22} Cobra filed a motion for summary judgment on the plaintiffs' claims and on its counterclaims. Cobra contended that each of the plaintiffs' claims were based on the mistaken premise that the Shamrocks owned the Shafer Road property's mineral estate. Cobra asserted that the public records and the plaintiffs' complaint demonstrated, as a matter of law, that Emerald owned the mineral estate when it entered into the Cobra lease.

{¶23} Following a status conference, the trial court granted the plaintiffs leave of several months to complete sufficient discovery to respond to Cobra's motion for summary judgment. During this time period, the plaintiffs took the depositions of Ms. Wessling and Diane Wentzel, one of Cobra's owners, and subpoenaed documents from BP. Cobra took the depositions of Steven and Ms. Shamrock.

{¶24} The plaintiffs filed a brief in opposition to Cobra's motion for summary judgment. Within this document, they included a "motion to amend the pleadings to conform to the evidence" pursuant to Civ.R. 15(B). The plaintiffs sought to delete the first claim in their complaint, i.e., promissory estoppel, and to add claims to their complaint

7

and affirmative defenses to their reply alleging that the Cobra lease was voidable as a contract of adhesion and because Ms. Shamrock lacked mental capacity to contract.

{¶25} Cobra filed a reply brief and a brief in opposition to the plaintiffs' motion to conform the pleadings.

### Judgment Entry of February 23, 2018

{¶26} On February 23, 2018, the trial court filed a judgment entry denying the plaintiffs' motion to conform the pleadings and granting summary judgment to Cobra on the plaintiffs' claims and on Cobra's counterclaims against Emerald.

{¶27} With respect to the plaintiffs' Civ.R. 15(B) motion, the trial court found that it was not proper at that stage of the proceedings. Rather, a party must file such a motion post-trial "when issues not raised by the pleadings are tried by express or implied consent."

{¶28} With respect to the plaintiffs' claims, the trial court found that the Geauga mortgage encompassed "after-acquired interests." Thus, when the Shamrocks subsequently acquired the mineral rights to the Shafer Road property, those rights became subject to the Geauga mortgage and were included in the foreclosure and the sheriff's sale. The trial court also found that the Shafer Road property's mineral rights merged with the surface rights pursuant to the January 2004 quit claim deed from the Hentosh trustees to the Shamrocks.

{¶29} With respect to Cobra's counterclaims, the trial court determined there was "no question" that by filing the complaint, Emerald breached the warranty of title, the covenant of quiet enjoyment, and the release provision.

8

### Judgment Entry of August 23, 2019

{¶30} The parties waived an evidentiary hearing, and the trial court determined Cobra's damages on the briefs and evidence. On August 23, 2019, the trial court filed a judgment entry finding that Cobra was entitled to reimbursement of its attorney fees and expenses incurred in defending against the plaintiffs' complaint and in prosecuting its counterclaims. The trial court further found that Cobra was limited to recovering against Emerald only because there was "no direct privity" between Cobra and the Shamrocks. It granted judgment in favor of Cobra and against Emerald in the amount of $99,423.28 and interest at the statutory rate.

{¶31} The plaintiffs appealed. This court dismissed the appeal for lack of a final appealable order because the trial court did not explicitly rule on Cobra's counterclaims with respect to the Shamrocks. *See Shamrock v. Cobra Resources, LLC*, 11th Dist. Trumbull No. 2019-T-0064, 2020-Ohio-3856, ¶ 6-10.

### Judgment Entry of September 11, 2020

{¶32} On September 11, 2020, Cobra filed a motion for limited reconsideration, requesting that the trial court grant summary judgment in its favor on its counterclaims against the Shamrocks. Two days later, the trial court filed a judgment entry granting summary judgment to the Shamrocks on Cobra's counterclaims.

{¶33} The trial court determined that "no cause of action" was "sustainable" against the Shamrocks because there was no privity between them and Cobra. While the Shamrocks were Emerald's successors-in-interest, the lack of "direct privity" between Cobra and the Shamrocks limited Cobra to recovering against Emerald only.

9

**{¶34}** Cobra and the plaintiffs both appealed, which we have consolidated for disposition.

**{¶35}** In case no 2020-T-0075, Cobra sets forth the following three assignments of error:

**{¶36}** "[1.] The trial court erred by granting summary judgment sua sponte to the Shamrocks on Cobra's counterclaims against them.

**{¶37}** "[2.] The trial court erred by denying Cobra's Motion for Summary Judgment on its counterclaims against the Shamrocks and by granting summary judgment to the Shamrocks thereon based on a lack of direct privity between Cobra and the Shamrocks when the Shamrocks waived lack of privity as an affirmative defense.

**{¶38}** "[3.] The trial court erred by denying Cobra's Motion for Summary Judgment on its counterclaims against the Shamrocks and by granting summary judgment to the Shamrocks based on lack of privity when the covenants at issue are real covenants that run with the land, and horizontal and vertical privity clearly exist."

**{¶39}** In case no. 2020-T-0076, the plaintiffs set forth the following five assignments of error:

**{¶40}** "[1.] The trial court erred in its application of the merger doctrine because (1) there was insufficient evidence of intent to sustain summary judgment and (2) the estates at issue were both fee estates so that there was no 'greater' estate and no 'lesser' estate.

**{¶41}** "[2.] The trial court erred in holding that the 'hereafter acquired' property clause of the Mortgage Deed transferred title of the mineral rights to Geauga Savings

10

Bank which, in turn, led to the transfer of those mineral rights to Emerald S Enterprises, LLC.

{¶42} "[3.] The trial court erred in not finding that the lease agreement between Marlene Shamrock and Cobra was invalid because that lease agreement was the product of undue influence and was unconscionable.

{¶43} "[4.] The trial court erred in awarding Cobra its legal fees and case expenses from Emerald because that award violated the 'American Rule' and there is no exception to the 'American Rule' that is applicable in this case.

{¶44} "[5.] The trial court erred in denying plaintiffs the right to amend their Complaint because, even though Rule 15(B), Ohio Rules of Civil Procedure may not have been applicable, the trial court should have analyzed the situation in accordance with Rule 15(A), Ohio Rules of Civil Procedure which Rule would have warranted amending the Complaint."

{¶45} We address the parties' respective assignments of error out of order and, at times, collectively for ease of discussion.

**Motion to Amend Pleadings**

{¶46} We first address the plaintiffs' fifth assignment of error, where they contend that the trial court erred in denying their motion to amend their pleadings.

{¶47} "Civ.R. 15 governs a motion for leave to amend the pleadings, and we review the trial court's decision for an abuse of discretion." *Kent State Univ. v. Bradley Univ.*, 2019-Ohio-2088, 136 N.E.3d 774, ¶ 109 (11th Dist.). An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law*

11

*Dictionary* 11 (8th Ed.Rev.2004). Where the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error. *Id.* at ¶ 67.

{¶48} The plaintiffs moved to amend the pleadings to conform to the evidence pursuant to Civ.R. 15(B), which applies "[w]hen issues not raised by the pleadings are *tried* by express or implied consent of the parties * * *." (Emphasis added.) This court has recognized that "when there has been no trial, the use of Civ.R. 15(B) to amend the pleadings is improper since it is only applicable where there has been a trial." *Kent State* at ¶ 111. Rather, pretrial amendments to the pleadings are governed by Civ.R. 15(A), which states in relevant part, as follows:

{¶49} "A party may amend its pleading once as a matter of course within twenty-eight days after serving it or, if the pleading is one to which a responsive pleading is required within twenty-eight days after service of a responsive pleading or twenty-eight days after service of a motion under Civ.R. 12(B), (E), or (F), whichever is earlier. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires." *See Kent State* at ¶ 112.

{¶50} The plaintiffs acknowledge that Civ.R. 15(B) was not applicable but contend that the trial court should have considered their motion under Civ.R. 15(A). However, the case that the plaintiffs cite undermines their contention. In *Suriano v. NAACP*, 7th Dist. Jefferson No. 05 JE 30, 2006-Ohio-6131, the Seventh District found that since the appellant used "an improper form to request an amendment to her complaint," i.e., a

Case Nos. 2020-T-0075, 2020-T-0076

Civ.R. 15(B) motion, the trial court was justified in overruling the motion "for this reason alone." *Id.* at ¶ 83.

**{¶51}** Even assuming, arguendo, that the trial court should have considered the plaintiffs' motion under Civ.R. 15(A), the trial court's denial was within its discretion. Although Civ.R. 15(A) allows for "liberal amendment," such motions are properly denied "if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party." *Turner v. Cent. Local School Dist.,* 85 Ohio St.3d 95, 99, 706 N.E.2d 1261 (1999). Cobra opposed the plaintiffs' motion on the basis of undue delay and undue prejudice, contending that there was a lengthy period of time between the filing of the plaintiffs' complaint and their motion to amend; the evidence underlying the plaintiffs' proposed amendments, i.e., Ms. Shamrock's testimony, would have been known to the plaintiffs before discovery had even occurred; and Cobra's motion for summary judgment had been pending for over a year. These assertions contain support in the record.

**{¶52}** Courts have found no abuse of discretion under similar circumstances. For example, in *Pintagro v. Sagamore Hills Twp.*, 9th Dist. Summit No. 25697, 2012-Ohio-2284, the Ninth District found that the trial court properly exercised its discretion in denying the motion to amend where the appellant moved to amend her complaint 14 months after its filing, three months after she learned about the potential claim, two months after discovery closed, and six weeks after the defendants moved for summary judgment. *Id.* at ¶ 23. The court noted that an attempt to amend a complaint following the filing of a motion for summary judgment raises the spectre of prejudice. *Id.* at ¶ 22.

**{¶53}** Accordingly, the trial court did not abuse its discretion in denying the plaintiffs' motion to amend.

13

**{¶54}** The plaintiffs' fifth assignment of error is without merit.

## Summary Judgment to Cobra

**{¶55}** We next address the plaintiffs' first, second, and third assignments of error, which involve the trial court granting summary judgment to Cobra on the plaintiffs' claims and on Cobra's counterclaims against Emerald.

### *Standard of Review*

**{¶56}** We review a trial court's order granting summary judgment de novo. *Sabo v. Zimmerman*, 11th Dist. Ashtabula No. 2012-A-0005, 2012-Ohio-4763, ¶ 9. A reviewing court will apply the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law. *Id.*

### *After-acquired Property*

**{¶57}** In their second assignment of error, the plaintiffs contend that the trial court erred in construing the Geauga mortgage as encompassing the Shafer Road property's mineral estate.

**{¶58}** Pursuant to the Geauga mortgage, Shamrocks conveyed a mortgage lien and security interest to Geauga on "described real and personal property" collectively referred to as the "Mortgaged Property." The "Mortgaged Property" consisted of the "Premises," which were defined as "[a]ll the right, title and interest which the Borrower *has or may have in and to* that certain parcel(s) of real estate described on Exhibit A attached hereto and made a part hereof," and seven classes of items described in lettered paragraphs. (Emphasis added.) The seven classes may be summarized as (a) buildings and improvements, (b) right and title "in and to the land within the streets," (c) rents and

14

income, (d) tenements and easements, (e) right to leases for equipment and personal property, (f) eminent domain awards, and (g) permits, licenses, and franchises.

{¶59} The mortgage's next paragraph states, "TO HAVE AND TO HOLD, all and singular, the above-granted Mortgaged Property, real and personal*, whether now owned or held or hereafter acquired by the Borrower*, unto the Bank, its successors and assignments, forever." (Emphasis added.)

{¶60} The plaintiffs first argue that the Geauga mortgage's "hereafter acquired" provision is ambiguous because it is susceptible to two or more reasonable interpretations. The plaintiffs cite this court's decision in *Rudzik Excavating, Inc. v. Mahoning Valley Sanit. Dist.*, 2017-Ohio-8630, 101 N.E.3d 38 (11th Dist.), for the proposition that "[w]hether a contract provision is capable of two or more reasonable interpretations is a question of fact."

{¶61} This court in *Rudzik* stated that "'[t]he determination of whether provisions in a contract are ambiguous is *a legal issue* that we review de novo. * * * [I]f the contract language is capable of two reasonable interpretations, there is an issue of fact [for the jury] as to the parties' intent.'" (Emphasis added.) *Id.* at ¶ 37, quoting *Career & Technical Assn. v. Auburn Vocational School Dist. Bd. of Edn.*, 11th Dist. Lake No. 2013-L-010, 2014-Ohio-1572, ¶ 18. If we determine that a contract is unambiguous, its application is a question of law. *See Time Warner Entertainment Co., L.P. v. Kleese-Beshara-Kleese*, 11th Dist. Trumbull No. 2009-T-0010, 2009-Ohio-6712, ¶ 29.

{¶62} The plaintiffs next argue that only the seven enumerated classes were subject to the Geauga mortgage's "hereafter acquired" provision. Since mineral rights

15

were not enumerated as a class, the Geauga mortgage did not grant Geauga an interest in the Shafer Road property's mineral estate.

{¶63} The Geauga mortgage's plain language does not support the plaintiffs' proposed construction. As indicated, the term "Mortgaged Property" included the "Premises." The "Premises" included the Shamrocks' interests in the Shafer Road property. Thus, the "hereafter acquired" provision applied not only to the seven enumerated classes but also to real estate interests.

{¶64} The Shafer Road property's mineral estate constituted a real estate interest. According to the Supreme Court of Ohio, oil and gas can be viewed as realty or as personalty depending on the location of the oil and gas relative to the land in which it lies. *Chesapeake Exploration, L.L.C., v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, ¶ 20. Ohio has long recognized, along with the majority of the states, that minerals underlying the surface, including oil and gas, are part of the realty. *Id.* at ¶ 21. While the mineral remains underground, it is "'in place'" and is "'the same as any part of the realty.'" *Id.*, quoting *Pure Oil Co. v. Kindall*, 116 Ohio St. 188, 201, 156 N.E. 119 (1927).

{¶65} The Shafer Road property's mineral estate also constituted a "hereafter acquired" real estate interest. The exhibit attached to the Geauga mortgage contained the complete legal description of the Shafer Road property without any reservation or exception of the mineral estate. Although the Shamrocks did not own the mineral estate when the Geauga mortgage was recorded, the mortgage expressly contemplated such a scenario. The Geauga mortgage encumbered "[a]ll the right, title and interest which the Borrower has or may have in" the Shafer Road property "whether now owned or held or

16

hereafter acquired." Under the plain meaning of these words, real estate interests that Shamrocks did not own but later acquired became subject to the Geauga mortgage. The Shamrocks subsequently acquired the Shafer Road property's mineral estate pursuant to the 2004 quit claim deed from the Hentosh trustees. As a result, the mineral estate became subject to the mortgage.

{¶66} The trial court's construction of the Geauga mortgage was consistent with its plain language and Ohio law. Accordingly, the trial court did not err in determining that the Geauga mortgage's "hereafter acquired" provision encompassed the Shafer Road property's mineral estate.

{¶67} The plaintiffs next argue that the trial court's construction of the Geauga mortgage was contrary to R.C. 5301.25(A), which governs the recording of transfers and encumbrances of property. It provides, in relevant part, as follows:

{¶68} "All deeds, * * * and instruments of writing properly executed for the conveyance or encumbrance of lands, tenements, or hereditaments, other than as provided in * * * section 5301.23 of the Revised Code [mortgages], shall be recorded in the office of the county recorder of the county in which the premises are situated. Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed * * * or instrument."

{¶69} According to the plaintiffs, there is nothing of record showing that the Shafer Road property's mineral estate was transferred to Geauga. However, the plaintiffs' reliance on R.C. 5301.25(A) is misplaced. R.C. 5301.25(A) is a recording statute for the benefit of a "bona fide purchaser" that lacks knowledge of an unrecorded conveyance.

17

This matter involves the *legal effect* of recorded documents. As explained above, the Shafer Road property's mineral estate became subject to the Geauga mortgage upon the Shamrocks' acquisition of ownership. The Geauga mortgage and the two deeds from the Hentosh trustees were all recorded. Following foreclosure of its mortgage, Geauga acquired the Shafer Road property pursuant to a sheriff's deed, which was also recorded.

{¶70} R.C. 2329.37 governs the effect of a sheriff's deed and provides as follows:

{¶71} "The deed provided for in section 2329.36 of the Revised Code [deed of sheriff, master] shall be prima facie evidence of the legality and regularity of the sale. *All the estate and interest of the person whose property the officer so professed to sell and convey, whether it existed at the time the property became liable to satisfy the judgment, or was acquired afterward, shall be vested in the purchaser by such sale.*" (Emphasis added.)

{¶72} As the Supreme Court of Ohio explained long ago, a sheriff's deed completely transfers to the purchaser the title and right of possession as would a joint deed made by both mortgagor and mortgagee. *Kerr v. Lydecker*, 51 Ohio St. 240, 251, 37 N.E. 267 (1894).

{¶73} Accordingly, the trial court's construction of the Geauga mortgage was not contrary to R.C. 5301.25(A).

{¶74} The plaintiffs' second assignment of error is without merit.

### *Merger Doctrine*

{¶75} In their first assignment of error, the plaintiffs contend that the trial court erred in its application of the doctrine of merger.

{¶76} The doctrine of merger holds that a servitude may not be impressed upon

18

an estate of another estate when both estates are owned by the same person. *Lone Star Steakhouse & Saloon of Ohio, Inc. v. Ryska*, 11th Dist. Lake No. 2003-L-192, 2005-Ohio-3398, ¶ 52. For example, an easement is extinguished by merger when the dominant and servient tenements come into the ownership of the same party, irrespective of the manner in which the easement was created. *Id.*

{¶77} The trial court found that the Shafer Road property's mineral estate merged with the surface estate pursuant to the January 2004 quit claim deed from the Hentosh trustees to the Shamrocks. The plaintiffs argue that the parties' intent to merge interests was an issue of fact that was not appropriately determined on summary judgment. They also argue that the merger doctrine is inapplicable in the context of severed surface and mineral estates.

{¶78} As explained above, the Shafer Road property's mineral estate was subject to the Geauga mortgage based on its plain language and Ohio law. In addition, Cobra asserted the merger doctrine as an alternative theory. Thus, any error in the trial court's application of the merger doctrine was harmless. *See* Civ.R. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties").

{¶79} The plaintiffs' first assignment of error is without merit.

### Undue Influence; Unconscionability

{¶80} In their third assignment of error, the plaintiffs contends that the trial court erred by not invalidating the Cobra lease based on undue influence and unconscionability.

{¶81} A principle of appellate jurisdiction is that a party ordinarily may not present an argument on appeal that it failed to raise below. *State v. Wintermeyer*, 158 Ohio St.3d

19

Case Nos. 2020-T-0075, 2020-T-0076

513, 2019-Ohio-5156, 145 N.E.3d 278, ¶ 10. The plaintiffs did not assert that the Cobra lease was invalid based on undue influence or unconscionability at any time in the trial court. Rather, the plaintiffs argued in their opposition to Cobra's motion for summary judgment that Ms. Shamrock lacked mental capacity to contract and that the Cobra lease was a contract of adhesion.

{¶82} At most, the latter issues implicate *procedural* unconscionability. *See*, *e.g.*, *Wascovich v. Personacare of Ohio*, 190 Ohio App.3d 619, 2010-Ohio-4563, 943 N.E.2d 1030, ¶ 31 (11th Dist.). However, unconscionability of a contract is an affirmative defense. *Frenchtown Square Partnership v. Nick Ents., Inc.*, 11th Dist. Trumbull No. 2020-T-0038, 2021-Ohio-663, ¶ 10. Affirmative defenses other than those listed in Civ.R. 12(B) are waived if not raised in the pleadings or in an amended pleading. *Jim's Steak House v. Cleveland*, 81 Ohio St.3d 18, 20, 688 N.E.2d 506 (1998); *Frenchtown* at ¶ 10. Thus, a party may not oppose a motion for summary judgment by raising a new affirmative defense in its opposition to summary judgment. *Frenchtown* at ¶ 10; *see Stanwade Metal Prods. Inc. v. Heintzelman*, 158 Ohio App.3d 228, 2004-Ohio-4196, 814 N.E.2d 572, ¶ 22 (11th Dist.) ("[A] response to a Civ.R. 56 motion for summary judgment is not one of the methods recognized to assert an affirmative defense").

{¶83} As explained above, the trial court did not abuse its discretion in denying the plaintiffs' motion to amend their pleadings to add claims and affirmative defenses of adhesion and lack of mental capacity. Since the plaintiffs did not properly raise the issues of undue influence or unconscionability in the trial court, the trial court did not err by failing to invalidate the Cobra lease on either basis.

{¶84} The plaintiffs' third assignment of error is without merit.

20

**Summary Judgment to the Shamrocks**

**{¶85}** We next address Cobra's three assignments of error, which involve the trial court granting summary judgment to the Shamrocks on Cobra's counterclaims. Our standard of review is de novo. *See Sabo*, *supra*, at ¶ 9.

**Waiver of Affirmative Defense**

**{¶86}** In its second assignment of error, Cobra contends that the trial court erred by granting summary judgment to the Shamrocks based on lack of privity because it is an affirmative defense that the Shamrocks waived.

**{¶87}** In general, privity is "'[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter.'" *Shoemaker v. Gindlesberger*, 118 Ohio St.3d 226, 2008-Ohio-2012, 887 N.E.2d 1167, ¶ 10, quoting *Black's Law Dictionary* 1337 (8th Ed.2004). "Privity of contract" is "[t]he relationship between the parties to a contract, allowing them to sue each other but preventing a third party from doing so." *Black's Law Dictionary*, PRIVITY (11th Ed.2019). "Privity of estate" or "privity of title" is "a mutual or successive relationship to the same right in property, as between grantor and grantee or landlord and tenant." *Id*.

**{¶88}** It is undisputed that the Shamrocks did not raise lack of privity as an affirmative defense in their reply to Cobra's counterclaims. As explained above, affirmative defenses other than those listed in Civ.R. 12(B) are waived if not raised in the pleadings or in an amended pleading. *Jim's Steak House*, *supra*, at ¶ 10. Therefore, we must determine whether lack of privity constitutes an affirmative defense.

**{¶89}** Civ.R. 8(C) provides, in relevant part, that "[i]n pleading to a preceding pleading, a party shall *set forth affirmatively* accord and satisfaction, arbitration and

21

award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, want of consideration for a negotiable instrument, fraud, illegality, injury by fellow servant, laches, license, payment release, res judicata, statute of frauds, statute of limitations, waiver, *and any other matter constituting an avoidance or affirmative defens*e." (Emphasis added.)

{¶90} Lack of privity is not expressly listed in Civ.R. 8(C), and there is no Ohio authority holding that lack of privity constitutes an affirmative defense. It appears that litigants often raise lack of privity in this manner. *See*, *e.g.*, *Delta Fuels, Inc. v. DLZ Ohio, Inc.*, 6th Dist. Lucas No. L-15-1001, 2016-Ohio-970, ¶ 8; *Cobb v. Mantua Twp. Bd. of Trustees*, 11th Dist. Portage No. 2003-P-0112, 2004-Ohio-5325, ¶ 9. However, the form of a pleading is not necessarily determinative of its legal effect. *See*, *e.g.*, Civ.R. 8(C) ("When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, if justice so requires, shall treat the pleading as if there had been a proper designation"); Civ.R. 8(F) ("All pleadings shall be so construed as to do substantial justice").

{¶91} The Supreme Court of Ohio has described an affirmative defense as one that "assumes establishment of a prima facie case." *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 432, 659 N.E.2d 1232 (1996), fn. 3; *see State ex rel. The Plain Dealer Publishing Co. v. Cleveland*, 75 Ohio St.3d 31, 33, 661 N.E.2d 187 (1996) ("An affirmative defense is a new matter which, assuming the complaint to be true, constitutes a defense to it"). In other words, "'[a]n affirmative defense is any defensive matter in the nature of a confession and avoidance. It admits that the plaintiff has a claim (the "confession") but asserts some legal reason why the plaintiff cannot have any

22

recovery on that claim (the "avoidance")." *Plain Dealer* at 33, quoting 1 Klein, Browne & Murtaugh, *Baldwin's Ohio Civil Practice*, Section 13.03 (1988). By contrast, a defense that directly attacks an element of a prima facie case rather than accepting the allegations of the complaint as true is not an affirmative defense. *Gallagher* at 432, fn. 3.

{¶92} Cobra contends that the relevant contractual provisions are binding on the Shamrocks as covenants that run with the land. A party alleging that a covenant runs with the land must establish "(1) that the parties to the underlying agreement intend the burden to be binding on successors in interest; (2) that the burden touch and concern the land; (3) that the covenant be created as part of a conveyance of property between parties *in privity (horizontal privity)*; (4) that successors in interest to the burdened land be *in privity (vertical privity)*; and (5) that the purchaser of the burdened property take it with notice of the restrictions." (Emphasis added.) *Head v. Evans*, 1st Dist. Hamilton No. C-790831, 1981 WL 9628, *3 (Feb. 11, 1981), fn. 4; *see also BM-Clarence Cardwell, Inc. v. Cocca Dev., Ltd.*, 2016-Ohio-7751, 65 N.E.3d 829, ¶ 41 (5th Dist.) ("Ohio law recognizes two 'types' of privity for purposes of enforcing restrictive covenants: horizontal privity, and vertical privity").

{¶93} Since privity was an essential element of Cobra's counterclaims against the Shamrocks, lack of privity was not an affirmative defense under Civ.R. 8(C). Accordingly, we find no reversible error on the basis of the Shamrocks' alleged waiver of an affirmative defense.

{¶94} Cobra's second assignment of error is without merit.

### Sua Sponte

{¶95} In its first assignment of error, Cobra contends that the trial court erred by

23

granting summary judgment to the Shamrocks sua sponte and based on an issue that the Shamrocks never raised, i.e., lack of direct privity.

**{¶96}** The Supreme Court of Ohio has held that Civ.R. 56 does not authorize courts to enter summary judgment in favor of a non-moving party. *Todd Dev. Co. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, 880 N.E.2d 88, ¶ 15. However, the court has recognized the following exception:

**{¶97}** """While Civ.R. 56 does not ordinarily authorize courts to enter summary judgment in favor of a non-moving party, * * * an entry of summary judgment against the moving party does not prejudice his due process rights where all relevant evidence is before the court, no genuine issue as to any material fact exists, and the non-moving party is entitled to judgment as a matter of law.""" *Id*. at ¶ 16, quoting *State ex rel. J.J. Detweiler Ents., Inc. v. Warner*, 103 Ohio St.3d 99, 2004-Ohio-4659, 814 N.E.2d 482, ¶ 13, quoting *State ex rel. Cuyahoga Cty. Hosp. v. Ohio Bur. of Workers' Comp*., 27 Ohio St.3d 25, 28, 500 N.E.2d 1370 (1986).

**{¶98}** The exception applies in "factual situations in which the court has all the relevant evidence before it and the summary judgment standard is met." *Id*. at ¶ 17. According to the court, "[t]he reason for this exception is that the parties have had an opportunity to submit all evidence to the court, and the parties have notice that the court is considering summary judgment. As a result, neither party's due process rights are violated." *Id.* at ¶ 17. Conversely, we have held that it is reversible error for a trial court to sua sponte grant summary judgment premised on issues not raised by the parties. *Mannion v. Lake Hosp. Sys., Inc.*, 11th Dist. Lake No. 2016-L-015, 2016-Ohio-8428, ¶ 22.

24

{¶99} Based on our review of the record, the exception was not applicable in this case. As explained above, privity was an essential element of Cobra's counterclaims against the Shamrocks. In its motion for summary judgment, Cobra asserted that it was entitled to judgment as a matter of law on its counterclaims against both Emerald and the Shamrocks. However, Cobra's arguments were directed solely to Emerald. Cobra did not assert that the Shamrocks were bound by the agreements or articulate its theory of liability.

{¶100} In its reply brief, Cobra asserted that the Shamrocks were liable as Emerald's "successors." However, Cobra did not articulate how this purported status entitled it to judgment as a matter of law. Further, reply briefs are generally limited to matters in rebuttal, and a party may not raise new issues for the first time. *See Ranallo v. First Energy Corp.*, 11th Dist. Lake No. 2005-L-187, 2006-Ohio-6105, ¶ 25.

{¶101} Cobra first addressed privity *after* the summary judgment proceedings, when it filed a motion for limited reconsideration of the trial court's prior judgment entries. The trial court did not expressly address Cobra's motion for reconsideration in its September 11, 2020, judgment entry. In fact, the court stated that it was "sua sponte" revisiting "the unresolved matter" of Cobra's "summary judgment motion" on its counterclaims against the Shamrocks.

{¶102} The Shamrocks also did not discuss privity on summary judgment. Rather, the plaintiffs opposed Cobra's motion on the basis of Ms. Shamrock's alleged lack of mental capacity to contract and the alleged adhesiveness of the Cobra lease.

{¶103} Since the parties did not discuss privity on summary judgment, they necessarily did not point to evidentiary quality material in the record or cite relevant legal

25

authority.  The trial court could not have properly determined that all the relevant evidence was before it or that the summary judgment standard was met.  *See Todd Dev. Co.*, *supra*, at ¶ 17.

{¶104} Accordingly, the trial court erred in sua sponte granting summary judgment to the Shamrocks on Cobra's counterclaims.

{¶105} Cobra's first assignment of error has merit.

### *Horizontal/Vertical Privity*

{¶106} In its third assignment of error, Cobra contends that the trial court erred by failing to grant summary judgment in its favor because its counterclaims involve "real covenants that run with the land" and because horizontal and vertical privity "clearly" exist.

{¶107} Cobra's argument does not acknowledge its burden on summary judgment. "Where a party seeks affirmative relief on its own counterclaims as a matter of law, it bears the burden of affirmatively demonstrating that there are no genuine issues of material fact with respect to every essential element of its claims."  *Firor v. Lydon*, 2018-Ohio-1662, 110 N.E.3d 1021, ¶ 41 (1st Dist.).  "Its motion for summary judgment must be denied if the party fails to satisfy this initial burden."  *Id.*

{¶108} As explained above, Cobra did not articulate its theory of liability against the Shamrocks on summary judgment.   Therefore, it did not satisfy its initial burden to demonstrate the absence of genuine issues of material fact regarding the essential elements of its counterclaims.   We decline to address the merits of Cobra's privity arguments for the first time on appeal.

{¶109} Accordingly, the trial court did not err in failing to grant summary judgment to Cobra.

26

{¶110} Cobra's third assignment of error is without merit.

## Damages Award to Cobra

{¶111} Lastly, we address the plaintiffs' fourth assignment of error, where they contend that the trial court erred in awarding Cobra its attorney fees and expenses in contravention of the American Rule.

{¶112} As indicated, the trial court determined that Emerald breached the warranty of title in the Cobra lease, the covenant of quiet enjoyment in the settlement agreement, and the release provision in the settlement agreement. The trial court assessed damages against Emerald for Cobra's attorney fees and expenses incurred in (1) defending against the plaintiffs' complaint and (2) prosecuting its counterclaims against Emerald.

{¶113} Since the trial court did not find the Shamrocks liable or assess damages against them, we review this assignment of error solely in relation to Emerald.

### *Standard of Review*

{¶114} An award of attorney fees is generally reviewed for an abuse of discretion. *See Ivancic v. Enos*, 2012-Ohio-3639, 978 N.E.2d 927, ¶ 70 (11th Dist.). However, where a case presents a legal issue regarding the availability of attorney fees, our review is de novo. *See 2-J Supply, Inc. v. Garrett & Parker, L.L.C.*, 4th Dist. Highland No. 13CA29, 2015-Ohio-2757, ¶ 9.

### *The American Rule and its Exceptions*

{¶115} Ohio has long adhered to the "American Rule" with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation. *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7. However, there are exceptions to this rule. *Id.* Attorney fees may

27

be awarded when a statute or an enforceable contract specifically provides for the losing party to pay the prevailing party's attorney fees or when the prevailing party demonstrates bad faith on the part of the unsuccessful litigant. *Id.*

{¶116} In *Gahanna v. Eastgate Properties, Inc.*, 36 Ohio St.3d 65, 521 N.E.2d 814 (1988), the Supreme Court of Ohio acknowledged an additional long-standing exception to the American Rule, which is applicable when a grantee "is compelled to defend his grantor's title in the land." *Id.* at 67. This exception is based on a pair of cases the court decided in the 1800s.

{¶117} In *McAlpin v. Woodruff*, 11 Ohio St. 120 (1860), the trial court awarded a lessee attorney fees for defending a dower claim brought by the lessor's widow. *Gahanna* at 66. The lessor's estate was held liable because the lessee was forced to defend the lessor's title to the property. *Id.* The court observed that the trial court "'rightfully gave the plaintiff his costs and counsel fees in defending against the claim of the widow.'" *Id.* at 66, fn. 3, quoting *McAlpin* at 130.

{¶118} In *Lane v. Fury*, 31 Ohio St. 574 (1877), Mary Ward and her husband sold real estate to John Lane. *Gahanna* at 66-67. However, the deed was fatally defective due to an improper acknowledgement by Mrs. Ward. *Id.* at 67. John Lane subsequently conveyed the property to Cornelius Lane, who in turn sold it to Anna Fury. *Id.* This conveyance included the grantor's warranty to defend the premises against the claims of others. *Id.* After Mary Ward's death, her heirs brought a suit for possession of the real estate, prompting Mrs. Fury to bring an action which successfully corrected Mrs. Ward's acknowledgement. *Id.* Mrs. Fury then sued her grantor, and obtained a judgment for her expenses, including attorney fees, incurred in defending against the Ward heirs' action

28

and in her action to reform the deed. *See id.*; *Lane* at 575-576. The Supreme Court of Ohio refused to reverse that portion of the judgment awarding attorney fees. *Gahanna* at 67.

### *Defense of Title*

{¶119} Based on the foregoing authority, the trial court was legally permitted to award Cobra its attorney fees and expenses incurred in defending against the plaintiffs' complaint.

{¶120} The warranty provision in the Cobra lease provides, "[Emerald] hereby warrants and agrees to defend title to the lands herein described." This is an example of a general warranty covenant. *See* Kuelnle, Levey & Bower, *Baldwin's Ohio Practice Real Estate Law*, Section 21:6 (Rev.Nov.2021) ("A modern form of the covenant of general warranty is: 'Grantor does warrant and will defend the title against the claims of all persons whomsoever'"). Ohio law provides that "[i]n a conveyance of real estate, or any interest therein, the words 'general warranty covenants' have the full force, meaning, and effect of the following words: 'The grantor covenants with the grantee, his heirs, assigns, and successors, that he is lawfully seized in fee simple of the granted premises; that they are free from all encumbrances; that he has good right to sell and convey the same, and *that he does warrant and will defend the same to the grantee and his heirs, assigns, and successors, forever, against the lawful claims and demands of all persons*.'" (Emphasis added.) R.C. 5302.06.

{¶121} As discussed above, the plaintiffs' claims were premised on their incorrect view that they had retained ownership of the Shafer Road property's mineral estate. As a result, Cobra was forced to defend Emerald's title to the Shafer Road property's mineral

estate to defend against the plaintiffs' claims. Pursuant to the exception acknowledged in *Gahanna*, the trial court was authorized to award the attorney fees and expenses that Cobra incurred in defending Emerald's title. *Accord Ligget v. Chesapeake Energy Corp.*, 591 Fed.Appx. 305, 312-313 (6th Cir.2014) (finding that lessees of an oil and gas lease were entitled to attorney fees incurred in defending against an ejectment action as damages in claim for breach of warranty of title).

### *Prosecution of Counterclaims*

**{¶122}** We reach a different conclusion regarding the attorney fees and expenses that Cobra incurred in prosecuting its counterclaims against Emerald.

**{¶123}** In *Lane*, *supra*, the Supreme Court of Ohio recognized the principle that a party's recovery may not include "expenses and attorney's fees '*in any remote or other suit than that by which the paramount title was established*.'" (Emphasis added.) *Id.* at 578, quoting *Rawle on Covenants* 312 (4th Ed.). In *Lane*, the court found that this principle was inapplicable because the attorney fees and expenses Ms. Fury incurred in her action to reform the deed were "expended in obtaining the paramount title." *Id.*

**{¶124}** Here, Cobra did not file a separate suit to obtain "paramount title." Cobra established on summary judgment that there was no defect in Emerald's title to the Shafer Road property's mineral estate. Rather, Cobra's counterclaims were breach of contract claims for compensatory damages, which the *Gahanna/Lane* exception does not encompass.

**{¶125}** Emerald cites this court's decision in *Don Keyser Co., Inc. v. Niles Mfg. & Finishing, Inc.*, 11th Dist. Trumbull No. 2003-T-0089, 2004-Ohio-7228, as requiring a

30

contrary conclusion. In that case, we quoted the Supreme Court of Ohio and stated as follows:

{¶126} "'When an indemnitor wrongfully refuses to defend an action against an indemnitee, the indemnitor is liable for the costs, including attorney fees and expenses, incurred by the indemnitee in defending the initial action and *in vindicating its right to indemnity in a third-party action brought against the indemnitor.*'" (Emphasis added.) *Id.* at ¶ 32, quoting *Allen v. Standard Oil Co.*, 2 Ohio St.3d 122, 443 N.E.2d 497 (1982), paragraph two of the syllabus.

{¶127} We find *Don Keyser* and *Allen* to be distinguishable because they involved a party's breach of its contractual obligations to defend and indemnify another party against third-party claims, not a party's breach of a warranty of title to real property. Since there is no indication that the Supreme Court of Ohio has overruled *Lane*, we decline to extend *Allen* to this factual setting. *See Templeton v. Sheets*, 4th Dist. Lawrence No. 00CA33, 2001 WL 1287142, *5 (Sept. 21, 2001) ("It is axiomatic that the opinions of the Supreme Court of Ohio, until overruled, are binding on all Ohio courts and should not be disregarded simply because the opinion is old").

{¶128} To the extent Cobra argues that such damages were permissible based on Emerald's breaches of the covenant of quiet enjoyment and/or the release provision, we disagree.

{¶129} Cobra cites *Jean-Gil, Inc. v. Babin*, 8th Dist. Cuyahoga No. 39178, 1980 WL 354310 (Sept. 25, 1980), in which the Eighth District held that "[r]easonable attorney fees are allowable as part of compensatory damages in an action for breach of covenant of quiet enjoyment of a leasehold * * *." *Id.* at *3. The Eighth District, in turn, cited

31

*McAplin*, *supra*, in support of this holding. *See Babin* at *3. However, the plaintiff in *McAplin* was awarded his "costs and counsel fees in *defending* against the claim of the widow." (Emphasis added.) *Id.* at 130. *McAplin* did address the plaintiff's attorney fees and expenses, if any, incurred in *prosecuting* his claim against the widow.

{¶130} Cobra also cites *Rayco Mfg., Inc. v. Murphy, Rogers, Sloss & Gambel*, 2019-Ohio-3756, 142 N.E.3d 1267 (8th Dist.), *appeal allowed*, 157 Ohio St.3d 1535, 2020-Ohio-122, 137 N.E.3d 1207, in which the Eighth District, sitting en banc, held that "attorney fees can be awarded as compensatory damages to the prevailing party on a motion to enforce a settlement agreement when the attorney fees are incurred as a direct result of a breach of the settlement agreement." *Id.* at ¶ 4. This purported exception to the American Rule originates from the Tenth District's decision in *Shanker v. Columbus Warehouse Ltd. Partnership*, 10th Dist. Franklin No. 99AP-772, 2000 WL 726786 (June 6, 2000), where that court drew a distinction between attorney fees awarded as costs and attorney fees awarded as compensatory damages. *See Shanker* at *4; *Tejada-Hercules v. State Auto Ins. Co.*, 10th Dist. Franklin No. 08AP-150, 2008-Ohio-5066, ¶ 9.

{¶131} As the lead dissenting opinion in *Rayco* aptly observed:

{¶132} "In every breach of contract litigation, the expenditure of attorney fees by the nonbreaching party to enforce the contract is a direct result of the other party's breach; the nonbreaching party is forced to incur attorney fees to enforce the contract. Whether attorney fees are labeled compensatory damages or costs is a distinction without a difference. Attorney fees are attorney fees. Calling them compensatory damages does not change the nature of the fees." *Id.* at ¶ 31 (Sheehan, J., dissenting).

Case Nos. 2020-T-0075, 2020-T-0076

{¶133} The Eleventh District has not adopted the *Shanker* exception, and we decline to do so in the present case. Rather, we agree with the following statement from the lead dissenting opinion in *Rayco*:

{¶134} "Unfortunately, our sister districts * * * applied the broad proposition in *Shanker* that attorney fees are recoverable for breach of a settlement agreement without any authority or guidance from the Ohio Supreme Court or the legislature. In other words, appellate courts have now carved out a narrow exception and placed settlement agreements on a pedestal, above all other types of contracts. With a stroke of a pen, appellate courts now allow any party that disputes a settlement agreement and succeeds to gain a windfall in attorney fees and in effect encourages pursuit of further litigation over any minor breach or discrepancy involving a settlement agreement." *Id.* at ¶ 27 (Sheehan, J., dissenting); *see also Sorin v. Bd. of Edn. of Warrensville Hts. School Dist.*, 46 Ohio St.2d 177, 179-180, 347 N.E.2d 527 (1976) ("We are well aware that the 'American rule' has been criticized in recent years, but, in our view any departure from such a deeply-rooted policy as the exclusion of attorney fees as costs is a matter of legislative concern") (Footnote omitted.)

{¶135} Finding no applicable exception to the America Rule, we conclude that the trial court erred in awarding Cobra its attorney fees and expenses incurred in prosecuting its counterclaims against Emerald.

## Conclusion

{¶136} In sum, the trial court did not err by denying the plaintiffs' motion to amend their pleadings; by granting summary judgment to Cobra on the plaintiffs' claims; or by

33

granting summary judgment to Cobra on its counterclaims against Emerald. The trial court's February 23, 2018, judgment entry is affirmed.

{¶137} The trial court erred by sua sponte granting summary judgment to the Shamrocks on Cobra's counterclaims. The trial court's September 11, 2020, judgment entry is reversed.

{¶138} The trial court did not err by awarding Cobra its attorney fees and expenses incurred in defending against the plaintiffs' complaint. However, the trial court did err by awarding Cobra its attorney fees and expenses incurred in prosecuting its counterclaims against Emerald. The trial court's August 23, 2019, judgment entry is affirmed in part and reversed in part.

{¶139} We remand this matter to the trial court for further proceedings (1) to determine the Shamrocks' liability, if any, with respect to Cobra's counterclaims; and (2) to recalculate Cobra's damages award against Emerald to exclude the attorney fees and expenses Cobra incurred in prosecuting its counterclaims against Emerald.


THOMAS R. WRIGHT, P.J., concurs,

MATT LYNCH, J., concurs in part and dissents in part, with a Dissenting Opinion.

_____

MATT LYNCH, J., concurs in part and dissents in part, with a Dissenting Opinion.

{¶140} I concur with the majority's disposition of this matter with the exception of the plaintiffs' fourth assignment of error relating to attorney's fees. The trial court properly awarded attorney's fees to Cobra arising from both its defense of plaintiffs' claims and

34

pursuit of its counterclaims. The majority's holding is contrary to the well-established and well-reasoned principle set forth by appellate districts in this state that attorney's fees can be awarded in relation to claims arising from a breach of a settlement agreement. Since an award of attorney's fees fairly compensates a party for actions taken in clear breach of a settlement agreement and is consistent with the public policy of this state, the fee award for pursuit of Cobra's counterclaims should be affirmed.

{¶141} Ohio appellate courts have held that attorney's fees arising from the breach of a settlement agreement can be recovered as compensatory damages since the breach necessarily results in the expenditure of such fees. *Shanker v. Columbus Warehouse Ltd. Partnership*, 10th Dist. Franklin No. 99AP-772, 2000 WL 726786, *5 (June 6, 2000) ("[b]ecause defendant's attorney fees are attributable to and were incurred as the result of plaintiffs' breach of the settlement agreement, defendant is entitled to recover those fees in order to make whole and compensate him for losses caused by plaintiffs' breach"); *Raymond J. Schaefer, Inc. v. Pytlik*, 6th Dist. Ottawa No. OT-09-026, 2010-Ohio-4714, ¶ 34; *Tejada-Hercules v. State Auto. Ins. Co.*, 10th Dist. Franklin No. 08AP-150, 2008-Ohio-5066, ¶ 10-23. Under this authority, there is no need to consider the applicability of an exception to the American Rule: "Ohio law allows a court to award attorney's fees as compensatory damages when a party's breach of a settlement agreement makes litigation necessary, even where none of the exceptions to the American Rule have been shown." *Rohrer Corp. v. Dane Elec Corp. USA*, 482 Fed.Appx. 113, 117 (6th Cir.). Here, Cobra brought and prevailed on counterclaims relating to the breach of the release and settlement agreement executed by Emerald, which supports an award of attorney's fees as damages.

35

**{¶142}** The majority dismissively rejects this "purported exception" and its origination in the Tenth District, citing in support of its conclusion a dissenting opinion in *Rayco Mfg., Inc. v. Murphy, Rogers, Sloss & Gambel*, 2019-Ohio-3756, 142 N.E.3d 1267 (8th Dist.). In doing so, the majority fails to give any weight to the fact that those Ohio appellate districts that have addressed this issue have reached the contrary conclusion: a breach of a settlement agreement entitles a party to attorney's fees as compensatory damages. *Tejada* at ¶ 10-23; *Schaefer* at ¶ 34; *Niederst v. Niederst*, 2018-Ohio-5320, 128 N.E.3d 800, ¶ 24 (9th Dist.); *Berry v. Lupica*, 196 Ohio App.3d 687, 2011-Ohio-5381, 965 N.E.2d 318, ¶ 19 (8th Dist.); *Wehr v. Petraglia*, 65 N.E.3d 242, 2016-Ohio-3126, ¶ 36 (7th Dist.); *Smith v. E.S. Wagner Co.*, 2016-Ohio-8096, 74 N.E.3d 963, ¶ 76 (3d Dist.); *Brown v. Spitzer Chevrolet Co.*, 5th Dist. Stark No. 2012 CA 00105, 2012-Ohio-5623, ¶ 20. The determination that attorney's fees can and should be awarded as compensatory damages in these circumstances is not, therefore, a holding that is based on faulty analysis from a singular court or an aberration but is instead precedent applied throughout the state of Ohio.

**{¶143}** The justification for these courts' application of this principle is sound: it is unjust to allow a party to obtain the benefit of signing a release or settlement (here, mineral rights to the property) and then cause the opposing party to incur significant legal fees by initiating litigation anyway. It has been observed that, as to settlement agreements, "one of the express 'benefits of the bargain' is the lack of litigation expenses." *Navarro v. Procter & Gamble Co.*, 515 F.Supp.3d 718, 785 (S.D.Ohio 2021). Awarding attorney's fees as compensatory damages properly recognizes those costs incurred as a direct result of the breach of the agreement. Further, "[a]llowing the recovery of attorney

36

fees as compensatory damages on a motion to enforce a settlement agreement is consistent with the strong public policy that exists in encouraging * * * and enforcing settlement agreements" as well as principles of finality. *Rayco* at ¶ 17, citing *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 38, 285 N.E.2d 324 (1972) ("'The law favors the resolution of controversies and uncertainties through compromise and settlement" since it "results in a saving of time for the parties, the lawyers, and the courts, and it is thus advantageous to judicial administration, and, in turn, to government as a whole.'") (citation omitted). An award of attorney's fees in this instance reinforces these principles since it would prohibit the filing of an action in breach of the agreement not to sue.

{¶144} The passages cited by the majority from the dissenting judge in *Rayco* to justify its decision are unconvincing. For example, it asserts that allowing for an award of attorney's fees as compensatory damages in settlement agreements places such agreements "on a pedestal, above all other types of contracts." However, as noted above, settlement agreements are encouraged as a matter of public policy for significant reasons including finality and judicial economy; the majority's analysis rejects these principles by failing to disincentivize the violation of a settlement agreement. Further, unlike in the case of a breach of another type of contract, the act of violating the often unambiguous terms preventing litigation is dissimilar from those cases where there is a good faith or legitimate dispute relating to the act causing the breach.

{¶145} To the extent the dissenting opinion in *Rayco* asserts the foregoing allows the prevailing party to get a "windfall," that is not the case. Compensation for costs actually incurred to compensate an attorney necessitated by the breaching party's conduct is hardly a windfall. As to the contention that awarding fees as damages

37

"encourages litigation," it must be emphasized here that Cobra did not bring the lawsuit and no litigation would have been pursued in the absence of the breach of the settlement agreement. Finally, the majority and *Rayco* dissent argue that the award of fees encourages "pursuit of further litigation over any minor breach or discrepancy." This argument is particularly inapplicable to the present matter where there is no "minor breach" but a clear violation of the agreement not to sue. In sum, the dissenting analysis of one judge which emphasizes principles that are of limited application does not provide strong grounds to reject the analysis and holding of the majority of the courts in this state, particularly where it is consistent with public policy and fairness to the parties.

{¶146} For the foregoing reasons, I respectfully dissent from the conclusion that attorney's fees were improperly awarded as to the counterclaims and would affirm the lower court's award of attorney's fees in its entirety. Allowing Cobra to recover for expenses incurred as a result of Emerald's choice to violate the clear terms of the settlement agreement is the only fair result.

38